IN THE MATTER OF STEPHEN F. ORLANDO, JR., AN ATTORNEY AT LAW.

Argued September 9, 1986—Decided November 20, 1986.

*Richard J. Engelhardt,* Assistant Ethics Counsel, argued the cause on behalf of Office of Attorney Ethics.

*Stephen J. Edelstein* argued the cause for respondent (*Schwartz, Pisano, Simon & Edelstein,* attorneys).

PER CURIAM.

This disciplinary proceeding arises from a presentment filed by the District V–C Ethics Committee recommending that respondent be suspended from the practice of law, and from a motion for final discipline, based on a criminal conviction, filed by the Office of Attorney Ethics (OAE). The ethics committee recommendation is based on a violation of *DR* 9–102 (*RPC* 1.4(a), 1.15). In connection with the ethics committee proceedings, respondent entered into a consent order on September 21, 1981, temporarily suspending him from the practice of law. The motion for final discipline is based on a guilty plea, entered by respondent on September 26, 1984, to an indictment for possession of cocaine.

The Disciplinary Review Board (DRB or Board), by a unanimous vote, concluded that

respondent's four and one half year temporary suspension is sufficient discipline for his record keeping infractions. However, respondent's acknowledged abuse of illegal drugs, coupled with strong indications of other self-destructive compulsive behavior, mandate the conclusion that respondent continue under indefinite suspension until such time as he can demonstrate his fitness to again practice law.

I

The charges involving a failure to keep accurate records arise out of a complaint filed with the ethics committee by Ms. Linda Wilferth on June 15, 1981. Ms. Wilferth had retained Mr. Orlando to represent her in a civil suit involving an automobile accident that occurred on June 18, 1980. The suit was settled for $9800, of which $3,231.66 was to be paid respondent as his fee. On January 15, 1981, Ms. Wilferth signed the settlement papers, approved the fee arrangement, and apparently signed

an authorization permitting respondent to endorse her signature on the settlement draft and then deduct his costs and fees and forward the balance to her.

Over the next three and one half months, Ms. Wilferth made several attempts to collect the settlement money owed to her. On May 7, 1981, after repeated calls to respondent's office proved fruitless, she retained another attorney who wrote to the respondent threatening legal action or an ethics complaint if he did not forward a check and an explanation within ten days. Respondent forwarded a check to Ms. Wilferth on May 11, 1981. He informed Ms. Wilferth's attorney that there had been a "mix-up" in his office and apologized for the delay. Ms. Wilferth demanded proof of the "mix-up," and when she did not receive it, she threatened to file an ethics complaint unless respondent forfeited his fee. Respondent refused to forfeit his fee, but offered to pay interest if the delay was his fault. Ms. Wilferth rejected his proposal, and filed a complaint with the ethics committee on June 15, 1981.

A staff auditor for the Division of Ethics and Professional Services visited respondent's office on August 6, 1981. The results of that audit were set forth in the DRB's Decision and Recommendation:

> Respondent had no trust records, ledgers, receipts or journals. He did produce bank statements for February through June 1981. The bank statements following February 2, 1981 indicated an amount in the account less than $9,800 which should have been there as a result of the settlement. In fact, on occasion the daily closing balances were in negative amounts.
>
> \*    \*    \*    \*    \*    \*    \*    \*
>
> In a review of the March 1981 bank statement, the auditor concluded that the balance of funds for a real estate settlement were insufficient for a mortgage payoff of $28,541.05. A deposit of $62,904.35 was made on March 12, 1981 in the trust account for the Miyagishima from Horowitz Real Estate closing. The auditor concluded that the negative balance of $9,165.74 on March 11, 1981 invaded the deposit of $62,904.35.

The auditor found negative balances on various dates between February and June 1981, but at the ethics committee

hearing he also testified that ultimately all of the clients involved received the funds to which they were entitled.

Respondent has consistently maintained that he has never taken or misused clients' funds. He admits that he failed to keep adequate records and attributes the discrepancies in his bank statements to mismanagement. Respondent testified that his practice consisted primarily of real estate matters and that one of his clients was involved in a series of related land acquisitions requiring 80 to 100 closings and an expenditure of approximately 40 million dollars. Typically, the client on request would forward funds based on estimated costs of closing and respondent would remit any excess after the closing. Specifically, he claims the negative and insufficient balances were caused by delays in depositing checks received. Respondent testified that when he knew a check had been received, he would disburse money from his trust account without first verifying that his secretary had deposited the check. Because he was a substantial depositor and performed legal services for his bank, the bank would honor his checks whether or not there was enough money in the account to cover them. Thus, there was often a delay before he realized that checks had not been deposited.

After an initial hearing, based on stipulated facts, the ethics committee found that respondent had violated *DR* 9-102(B) and (C) by failing to keep adequate records, but that he had not misappropriated funds nor diverted them for his personal use. The committee specifically noted that respondent had not previously been the subject of an ethics complaint and had an impeccable reputation as a lawyer. There was evidence that he had recently been suffering from a severe depression. When the matter went to the DRB, it concluded that the record was inadequate and remanded for a full hearing.

On May 13, 1983, a new complaint was filed on both the Wilferth and Miyagishima matters. After a full hearing, the committee concluded that respondent was guilty of record-keep-

ing infractions and recommended suspension, but concurred with the finding of the earlier ethics committee proceeding that respondent had not misused clients' funds.

On September 26, 1984, respondent pleaded guilty to one count of an indictment charging him with possession of 2.89 grams of cocaine. Under the plea agreement, the other charges against him were dropped. On October 15, 1985, the Court entered an order discharging respondent from supervisory treatment and dismissing the indictment against him, providing that the order "shall not be deemed a conviction for purposes of disqualifications or disabilities * * * imposed by law upon conviction of a crime * * *."

After a *de novo* review of the record, the DRB agreed with the findings of the ethics committees that there was no clear and convincing evidence that respondent knowingly misappropriated clients' funds. Rather, the Board found that the negative balances in respondent's accounts were caused by poor office management and that respondent was negligent in maintaining adequate records and in overseeing his accounting records. Thus, the Board found that disbarment was not mandated by *In re Wilson*, 81 *N.J.* 451 (1979), and that suspension was the appropriate sanction. The Board concluded further that the four and one half years of temporary suspension that respondent had already served was sufficient discipline for his record keeping infractions.

With respect to respondent's admitted possession of cocaine, the Board found that this adversely reflected on his fitness to practice law. See *DR* 1–102(A)(3), *RPC* 8.4(b). The Board recommended indefinite suspension until such time as Mr. Orlando can demonstrate his fitness to again practice law.

## II

As we noted in *In re Wilson*, 81 *N.J.* 451, 456 (1979), "the principal reason for discipline is to preserve the confidence of the public in the integrity and trustworthiness of lawyers in

general." In pursuit of this goal, we have felt compelled to impose strict sanctions for the intentional misuse of clients' trust accounts. Disbarment is mandated for the knowing misappropriation of clients' funds, *In re Wilson, supra,* 81 *N.J.* 451, for combining operating and trust funds in order to pay personal and office expenses, *In re Fleischer,* 102 *N.J.* 440 (1986), and for borrowing from one client's account to make up for a shortfall in another's, *In re Arnold E. Brown,* 102 *N.J.* 512 (1986).

■ We agree with the DRB that respondent was negligent in maintaining adequate accounting records and procedures. We also agree that "there is no clear and convincing evidence that respondent knowingly misappropriated clients' funds which would require the extreme sanction of disbarment." In fact, our independent review of the record reveals no evidence of a knowing misappropriation of clients' funds. Rather, the record reflects that respondent was seriously and inexcusably inattentive to the accounting and bookkeeping details of his voluminous real estate practice, but did not knowingly misappropriate clients' funds.

Unlike the situation in *Wilson, supra,* 81 *N.J.* 451, there has been no allegation that respondent used clients' money as if it were his own. Nor has there been any allegation, as in *Fleischer, supra,* 102 *N.J.* 440, that respondent combined his accounts and used client trust funds to pay office and personal expenses.

Although we conclude respondent's conduct is distinguishable from that in *Wilson,* we do not condone his irresponsible behavior. We are in full agreement with the DRB decision, which states:

> Attorneys must recognize that part of their responsibility to the legal system is the maintenance and supervision of accounting records. There can be no excuse for inadequate record keeping particularly in light of the technological and relatively inexpensive means available today.

Nevertheless, "[t]he severity of discipline to be imposed must comport with the seriousness of the ethical infractions in light of all the relevant circumstances." *In re Nigosian,* 88 *N.J.* 308,

315 (1982). We note that Mr. Orlando has a good reputation among his colleagues, and that his trustworthiness and professionalism have not been challenged before. More than sixty letters have been received attesting to his good character. Although he acted irresponsibly and unprofessionally in these instances, we think that suspension, rather than disbarment, is the appropriate sanction. Moreover, we agree with the DRB that the four and one half year suspension that respondent has already served is sufficient discipline for his record keeping infractions.

■ We also agree with the DRB that respondent's acknowledged abuse of illegal drugs adversely reflects on his fitness to practice law, *DR* 1–102(A)(3), *RPC* 8.4(b). In determining the appropriate discipline for such conduct, we reiterate that our primary goal is fostering public confidence in the bar, not punishing the errant attorney. *In re Kushner*, 101 *N.J.* 397, 400 (1985). Given respondent's previously unblemished record, and his apparent depressive condition, for which he took the initiative in seeking psychiatric help, we adopt the DRB's recommendation of indefinite suspension until such time as he can demonstrate his fitness to practice law again.

■ In an attempt to demonstrate that he is now fit to resume his practice, respondent moved on August 5, 1986, for leave to supplement the record. He sought to introduce letters from his therapists and employer attesting to his rehabilitation. We decline to resolve this question on the basis of the limited information before us. We therefore remand this matter to the DRB to develop an adequate record and to make recommendations to this Court on the question of respondent's fitness to practice law. We also impose upon respondent the obligation to reimburse the Ethics Financial Committee for appropriate administrative costs.

So Ordered.

*For remandment*—Justices CLIFFORD, HANDLER, POL-LOCK, O'HERN, GARIBALDI and STEIN—6.

*Opposed*—None.

It is ORDERED that the September 21, 1981, temporary suspension of STEPHEN F. ORLANDO, JR., of NEW BRUNS-WICK, who was admitted to the bar in this jurisdiction in 1968, be continued until such time as respondent can demonstrate his fitness to practice law and until the further Order of this Court; and it is further

ORDERED that this matter be remanded to the Disciplinary Review Board to develop an adequate record and to make recommendations on respondent's present fitness to practice law; and it is further

ORDERED that respondent continue to comply with Administrative Guideline 23 of the Office of Attorney Ethics during the period of his suspension; and it is further

ORDERED that respondent reimburse the Ethics Financial Committee for appropriate administrative costs arising out the prosecution of this matter.