## IN THE MATTER OF RICHARD T. KINNEAR, AN ATTORNEY AT LAW.

Argued November 17, 1986—Decided March 20, 1987.

*Richard J. Engelhardt,* Assistant Ethics Counsel, argued the cause for Office of Attorney Ethics.

*Robert F. Novins* argued the cause for respondent (*Novins, Farley, York, DeVincens & Pentony,* attorneys, *Frank P. Verdi,* on the brief).

PER CURIAM.

The Office of Attorney Ethics (OAE) commenced this disciplinary proceeding by filing with the Disciplinary Review Board (DRB) a Motion for Final Discipline of respondent, Richard T. Kinnear, pursuant to Rule 1:20–6(b)(2)(i). The Motion was based on respondent's guilty plea to a charge of distribution of a controlled dangerous substance, cocaine, in violation of *N.J. S.A.* 24:21–19a(1).

The DRB accurately sets forth the relevant facts surrounding respondent's conviction in its Decision and Recommendation:

> Respondent, an admitted addict, "shared or gave" cocaine to an undercover narcotics investigator on September 7, 1984 in Wall Township. According to a State Police analysis, the quantity involved was 1.35 grams.
>
> Respondent and nine others were later indicted by a Monmouth County Grand Jury. On April 8, 1985 respondent pleaded guilty to a charge of distribution of a controlled dangerous substance. On September 26, 1985 respondent was sentenced. He was placed on probation for three years and was directed to

continue outpatient treatment for his addiction. He also was fined $2,000. The sentencing judge noted that respondent was principally a user and that his judgment had gone a little bit awry. The judge found that the mitigating factors outweighed the aggravating factors as a reason for the noncustodial sentence.

Four members of the DRB recommended that respondent be suspended from the practice of law for one year. Two members recommended that respondent be suspended from the practice of law for three years and one member recommended respondent be disbarred. Our independent review of the record leads us to accept the recommendation of the majority of the DRB.

## I

A criminal conviction of an attorney is conclusive evidence of guilt in a disciplinary proceeding. *R.* 1:20–6(b)(1). Once an attorney is convicted of a crime, the sole issue to be considered is the extent of discipline to be imposed. *R.* 1:20–6(b)(2)(ii). *Matter of Goldberg*, 105 *N.J.* 278, 280 (1987); *Matter of Kaufman*, 104 *N.J.* 509, 510 (1986); *Matter of Kushner*, 101 *N.J.* 397, 400 (1986); *In re Addonizio*, 95 *N.J.* 121, 123–24 (1984); *In re Infinito*, 94 *N.J.* 50, 56 (1983); *In re Rosen*, 88 *N.J.* 1, 3 (1981); *In re Mirabelli*, 79 *N.J.* 597, 602 (1979); *In re Mischlich*, 60 *N.J.* 590, 593 (1972).

 The Court's goal in disciplinary proceedings is "to protect the interests of the public and the bar while giving due consideration to the interests of the individual involved." *Matter of Litwin*, 104 *N.J.* 362, 365 (1986); *In re Infinito, supra*, 94 *N.J.* at 57; *In re Mischlich, supra*, 60 *N.J.* at 593. In considering the appropriateness of the discipline we consider many factors: the nature and severity of the crime, whether the crime is directly related to the practice of law, the respondent's good reputation, prior trustworthy professional conduct and general good character. *Matter of Litwin, supra*, 104 *N.J.* at 365; *Matter of Kushner, supra*, 101 *N.J.* at 400–01; *In re Infinito, supra*, 94 *N.J.* at 57; *In re Mischlich, supra*, 60 *N.J.*

at 593. Since a judgment of conviction is given conclusive effect, we do not make an independent examination of the underlying facts to ascertain guilt, but do consider such facts that do "not dispute the crime but that mitigat[e] the damage an attorney's misconduct has done, and is likely to do, to the integrity of the legal profession." *Matter of Kushner, supra,* 101 *N.J.* at 400–01; *see In re Infinito, supra,* 94 *N.J.* at 57; *In re Hughes,* 90 *N.J.* 32, 36 (1982).

## II

Unfortunately, attorneys are not immune from the dangers of drug addiction. Recently, we decided four disciplinary cases that concerned attorneys involved in drug related matters: in *Matter of Romano,* 104 *N.J.* 306 (1986), we disbarred a promising young attorney whose need for funds to feed his drug habit led him to misappropriate his clients' funds; in *Matter of Kaufman, supra,* 104 *N.J.* 509, we suspended for six months an attorney who pleaded guilty to two criminal indictments, each of which charged him with possession of a controlled dangerous substance, but whose convictions were unrelated to his law practice; in *Matter of Orlando,* 104 *N.J.* 344 (1986), we indefinitely suspended from the practice of law an attorney who pleaded guilty to a one count indictment for possession of cocaine until such time as he would demonstrate his fitness to practice law again. In that case, respondent had been suspended for other non-drug related disciplinary matters for four and one half years. In *Matter of Goldberg, supra,* 105 *N.J.* 278, we disbarred an attorney who participated in a major criminal narcotics conspiracy and who actively utilized his professional license and legal skills as an attorney to help drug pushers violate the law.

Other jurisdiction likewise have held that narcotics convictions justify disbarment, *see, e.g., Matter of Gorman,* 269 *Ind.* 236, 379 *N.E.*2d 970 (1978) (possession, conspiracy to distribute and distribution of cocaine); *Louisiana State Bar Ass'n v.*

*Bensabat,* 378 *So.*2d 380 (La.1979) (conspiracy to import cocaine into the United States, conspiracy to possess with intent to distribute cocaine, possession with intent to distribute cocaine hydrochloride); *In re Glasser,* 53 *A.D.*2d 38, 385 *N.Y.S.*2d 86 (1976) (conspiracy and distribution and possession with intent to distribute cocaine); *Muniz v. State,* 575 *S.W.*2d 408 (Tex.Civ. App.1978) (conspiracy to import marijuana and conspiracy to possess with intent to distribute marijuana), or other serious disciplinary action, such as a period of suspension. *See, e.g., State ex rel. Neb. State Bar Ass'n v. Matt,* 213 *Neb.* 123, 327 *N.W.*2d 622 (1982) (serving as conduit for a friend's purchase of two ounces of cocaine—one year suspension); *Matter of Preston,* 616 *P.*2d 1 (Alaska 1980) (distribution of cocaine to an undercover agent; and marijuana and cocaine to a minor—two year suspension); *In re Kreamer,* 14 *Cal.*3d 524, 535 *P.*2d 728, 121 *Cal.Rptr.* 600 (1975) (illegal possession and conspiracy to distribute marijuana—received three year suspension); *Disciplinary Board of Hawaii v. Bergen,* 60 Haw. 546, 592 *P.*2d 814 (1979) (possession with intent to distribute cocaine—five year suspension). *See generally Annotation,* "Narcotics Conviction As Crime of Moral Turpitude Justifying Disbarment or Other Action Against Attorney," 99 *A.L.R.*3d 288.

### III

Each disciplinary case is fact sensitive. *Matter of Litwin, supra,* 104 *N.J.* at 366. Respondent was admitted to the New Jersey bar in 1972. He has no prior disciplinary history and his misconduct was not related to the practice of law. Nevertheless, a conviction of distribution of a controlled dangerous substance is a very serious transgression and "evidences a public judgment that places in question the lawyer's integrity and respect for the law." *Matter of Kaufman, supra,* 104 *N.J.* at 514. Our society unequivocally condemns the abuse of drugs. Based on our review of the record, we conclude that respondent's conviction establishes that he engaged in illegal

conduct that adversely reflects on his fitness to practice law, in contravention of *DR* 1-102(A)(3).[1]

Nevertheless, our independent review of the record leads us to conclude as did the sentencing judge and the DRB that respondent in 1984 was primarily a drug user and that the circumstances leading to respondent's conviction (the obtaining of cocaine at the behest of his purportedly good friend—a police informant—who claimed he was unable to secure drugs) are unlikely to recur. Likewise, we agree with the DRB that "[t]here is no clear and convincing evidence in the record that respondent profited from the single act of distribution. The only sworn testimony was by respondent who, at the time of his guilty plea, acknowledged that 'he shared or gave' cocaine to another."

In most cases an attorney convicted of distribution of controlled dangerous substances would be disbarred. Disbarment would certainly be appropriate if the distribution were done for gain or profit. We do not impose that penalty in this case because we perceive that respondent here was primarily a drug user, and his misconduct constituted one episode, unrelated to the practice of law, and unlikely to recur. Respondent's conduct was totally different from the egregious conduct of the respondent in *Matter of Goldberg, supra,* 105 *N.J.* 278, 283, who

> [b]y his voluntary and knowing participation in a conspiracy to distribute and to possess with intent to distribute a controlled narcotic substance, respondent has failed to uphold the minimum standards of honesty, uprightness, and fair dealing of a member of the bar. The conspiracy evidenced continuing and prolonged, rather than episodic, involvement in crime. The object of the conspiracy constituted a direct threat to society, as well as the indirect, albeit

---

[1]Effective September 10, 1984, the Rules of Professional Conduct of the American Bar Association, as modified by this Court, govern the conduct of the members of the bar of this State. *R.* 1:14. Respondent's actions occurred prior to this date, and are consequently governed by the Disciplinary Rules then in force. Respondent's behavior is equally violative of RPC 8.4(b), the analogous provision of the Rules of Professional Conduct.

real, harm to persons who eventually would be mired in drugs. The crime quite obviously involved dishonesty, deceit and a contempt for law. Moreover, respondent was motivated by personal greed, and further, he used his professional status and skills as a lawyer to assist in the engineering of the criminal scheme.

Nor is respondent like the attorney in *Matter of Romano, supra,* 104 *N.J.* 306, whose drug habit led to the misappropriation of his clients' funds. Here, respondent's misconduct did not affect any client. Instead, respondent's misconduct is most similar to the misconduct of the attorneys in *Matter of Kaufman, supra,* 104 *N.J.* 509, and *Matter of Orlando, supra,* 104 *N.J.* 344.

█ Our central concern is the fostering of public confidence in the bar, not the punishment of wrongdoing attorneys. *Matter of Kushner, supra,* 101 *N.J.* 400; *In re Hughes, supra,* 90 *N.J.* at 32. Here, the record does not support the conclusion that respondent's conduct was based on dishonesty or venality. We do not find that his misconduct demonstrates his lack of fitness to be a lawyer. Respondent contends that he is rehabilitated and has been alcohol and drug free since his arrest. We hope that he continues to put his life in order.

For all these reasons, we conclude that this respondent should be suspended from the practice of law for one year. However, we condition respondent's return to practice upon a medical report that respondent has continued to be alcohol and drug free.

We are concerned about not only protecting the public, but also helping the lawyer overcome his addiction and once again become a productive member of society. We therefore encourage the development of committees like the Alcoholism Advisory Committee in the drug abuse area. Such committees cannot be established overnight, and we realize that it is extremely difficult to help an addict who refuses help. Nevertheless, we believe that by being alert and acting in some sense like each other's keeper, lawyers will be able in at least a few cases to

identify colleagues who, because of a drug or alcohol problem, are unable to function effectively as attorneys. Early detection may enable us to promote their rehabilitation and prevent injury to the public. *See Matter of Hein,* 104 *N.J.* 297 (1986).

Respondent shall reimburse the Ethics Financial Committee for appropriate administrative costs.

*For suspension*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.

## ORDER

It is ORDERED that RICHARD T. KINNEAR of MANASQUAN, who was admitted to the bar of this State in 1972, be suspended from the practice of law for a period of one year and until the further order of this Court, effective April 10, 1987; and it is further

ORDERED that respondent's restoration to practice, if otherwise appropriate, shall be conditioned upon his submission of acceptable medical evidence that he has remained alcohol and drug free during the period of his suspension; and it is further

ORDERED that RICHARD T. KINNEAR reimburse the Ethics Financial Committee for appropriate administrative costs; and it is further

ORDERED that RICHARD T. KINNEAR be restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that RICHARD T. KINNEAR comply with Administrative Guideline Number 23 of the Office of Attorney Ethics dealing with suspended, disbarred or resigned attorneys.