IN THE MATTER OF DAVID J. PLEVA, AN
ATTORNEY AT LAW.

Argued January 21, 1987—Decided June 4, 1987.

*Richard J. Engelhardt,* Assistant Ethics Counsel, argued the cause on behalf of Office of Attorney Ethics.

*Frank J. Cuccio,* argued the cause for respondent (*Cuccio & Cuccio,* attorneys; *Frank J. Cuccio* and *Philip L. Guarino* on the brief).

PER CURIAM.

This is an attorney-disciplinary case. On November 15, 1982, respondent, David J. Pleva, pleaded guilty to charges of possession of cocaine in violation of *N.J.S.A.* 24:21–20a(1) and possession of over five grams of hashish and possession of over twenty-five grams of marijuana in violation of *N.J.S.A.* 24:21–20a(4). He also pleaded guilty to two counts of another indictment charging him with giving false information when completing a certificate required by law before purchasing firearms, contrary to *N.J.S.A.* 2C:39–10c. Respondent was sentenced on February 4, 1983. He was placed on probation for two years, fined $1,000 and given a term of sixty days in the Morris County jail to be served sometime during the probationary period. On December 3, 1985, this sentence was modified to permit respondent to serve the custodial sentence on consecutive Sundays by participating in the county jail's farm program.

Three weeks after respondent's convictions, the Office of Attorney Ethics filed a motion with the Disciplinary Review Board (DRB or Board) to have respondent temporarily suspended. This motion was denied. Thereafter, the Office of Attorney Ethics filed a motion with the Board for final discipline

pursuant to *Rule* 1:20–6(b)(2)(i). Respondent's motion for a stay of all action by the Board because of pending proceedings was denied by order of this Court dated May 20, 1986. On May 21, 1986, a hearing was held before the Board. On October 2, 1986, the Board, by a six-member majority, recommended a private reprimand for respondent's firearms offenses and, by a five-member majority, recommended a six-months suspension from the practice of law for his drug-related offenses. On December 4, 1986, this Court entered an order to show cause why respondent should not be disbarred or otherwise disciplined.

I.

Respondent does not contest the Board's conclusion that his convictions constitute dispositive evidence of violations of the Rules of Professional Conduct. Respondent contends, however, that this Court should not follow the Board's recommendation that he be suspended from the practice of law for a period of six months as discipline for his drug-related offenses. He apparently does not contest the recommendation of a private reprimand for the firearms conviction.

In disciplinary proceedings against an attorney, a criminal conviction is conclusive evidence of respondent's breach of ethics. *R.* 1:20–6(b)(1); *Matter of Coruzzi,* 98 *N.J.* 77 (1984). Thus, there is no need for this Court to make an independent examination of the underlying facts in order to ascertain guilt. *Matter of Bricker,* 90 *N.J.* 6, 10 (1982). The sole question involved in such a case is the extent of discipline to be imposed. *R.* 1:20–6(b)(2)(ii); *Matter of Infinito,* 94 *N.J.* 50, 56 (1983). The underlying facts may be relevant to this question. *Matter of Rosen,* 88 *N.J.* 1 (1981). To this end, we have examined the facts and circumstances surrounding these convictions. Our findings parallel those of the DRB.

On the afternoon of June 23, 1981, local police were notified that shots had been fired from inside respondent's home in

Randolph Township. Officers arrived at the scene, knocked on the front door and asked respondent whether he had heard any shots. Respondent did not speak. Instead, moving very slowly, he "held out his hand pointing his index finger in such a way as to resemble a hand gun. He then moved his thumb downward as would the hammer of a gun being fired." Respondent later admitted that he had fired the gun. During the course of this confrontation, an officer noted that respondent's pupils were dilated and that his speech and comprehension seemed delayed. The officer concluded that respondent was under the influence of some substance, and a search of the house turned up a variety of drugs. These facts gave rise to the indictment charging violations of Title 24.

The search also produced the shotgun that had been fired, as well as another rifle. Police investigation revealed that respondent had purchased a rifle and a shotgun two weeks earlier, on June 6, 1981, from a sporting goods store in Denville. In connection with the weapons purchase, respondent completed a Federal Firearms Transaction Record and a New Jersey Certificate of Eligibility. Respondent answered "no" to a question on the federal form that asked whether he was "an unlawful user of, or addicted to, marijuana, or a depressant, stimulant, or narcotic drug." However, the police investigation had uncovered a hand-written statement that respondent had given to police following an arrest on February 18, 1981—prior to the weapons purchase in question—for possession of quaaludes; the statement disclosed that respondent had smoked a small amount of hashish and had taken some valium. These facts were relevant to the indictment charging a violation of *N.J.S.A.* 2C:39–10c.

Respondent unsuccessfully sought to suppress the evidence obtained from the search of his premises. He thereafter entered guilty pleas to the charges, reserving the right to challenge later the validity of the search and seizure. As noted, respondent was sentenced on February 4, 1983. The sentencing court determined that as a condition of probation, a brief

period of confinement was necessary for effective deterrence. In making this determination, the court emphasized the gravity of the offenses and respondent's apparent lack of remorse for his actions:

> It seems like Mr. Pleva doesn't recognize the difference between right and wrong, rather he regards what he does as his right and then rationalizes when, according to more objective standards, the wrong is pointed out. This kind of amoral attitude I think is dangerous.
>
> As I focus on Mr. Pleva, I see, rather than someone that was so successful, I see a drug user, a person who misrepresents. That kind of attitude and character, that kind of life style of abuse of substance strongly suggests to me the likelihood of recidivism, what I describe as an arrogance toward the State's prosecution of him.

Following the imposition of sentence, respondent appealed both convictions to the Appellate Division. On June 20, 1985, the Appellate Division, in an unpublished opinion, affirmed the trial court's denial of respondent's motion to suppress evidence. On July 16, 1985, the Appellate Division, in a reported decision, rejected respondent's challenge to his conviction of the false-answer charges. *State v. Pleva*, 203 *N.J.Super.* 178.[1] We denied certification on September 23, 1985. 102 *N.J.* 323.

## II.

"The principal reason for discipline is to preserve the confidence of the public in the integrity and trustworthiness of lawyers in general." *Matter of Kushner*, 101 *N.J.* 397, 400 (1986), *Matter of Wilson*, 81 *N.J.* 451, 456 (1979). Therefore, in making disciplinary decisions, we must consider the interests of the public as well as of the bar and the individual involved. *Matter of Kushner, supra*, 101 *N.J.* at 400; *Matter of Infinito, supra*, 94 *N.J.* at 57; *In re Mischlich*, 60 *N.J.* 590, 593 (1972).

---

[1] Respondent has since filed a motion to vacate the guilty plea to the charge of giving a false answer in the application for the purchase of firearms. This motion has been denied by the trial court and this decision is now pending appeal in the Appellate Division.

■ We have recognized that "[d]isciplinary determinations are necessarily fact-sensitive." *Matter of Kushner, supra,* 101 *N.J.* at 400. Not only should consideration be given to the nature and severity of the offense and the relationship of the offense to the practice of law, it should also be given to factors that mitigate the damage an attorney's misconduct has caused. These would include the attorney's good reputation, his prior trustworthy professional conduct, and his general good character. *Id.* at 400–01; *Matter of Infinito, supra,* 94 *N.J.* at 57.

■ In this case, respondent's misconduct involved the commission of criminal acts. Respondent was convicted for possession of cocaine, hashish, and marijuana. An offense involving the use or distribution of controlled dangerous substances by an attorney, an officer of the court, can be extremely serious, inviting stern discipline. A recent case illustrating this point is *Matter of Goldberg,* 105 *N.J.* 278 (1987). There, in determining that the attorney should be disbarred, we emphasized: that respondent was involved in a large scale conspiracy to distribute, and to possess with intent to distribute, a controlled narcotic substance; that the conspiracy was continuing and prolonged, rather than episodic; that the object of the conspiracy constituted a direct threat to society; that the crime involved dishonesty, deceit, and a contempt for law; that respondent was motivated by personal greed; and that he used his professional status and skills as a lawyer to assist in the engineering of the criminal scheme.

In *Matter of Kaufman,* 104 *N.J.* 509 (1986), respondent had pleaded guilty to two criminal indictments, each of which charged him with possession of a controlled dangerous substance. We stated that: "If the fact of two drug offenses within four months does not demonstrate a callous disregard of a lawyer's obligation to conduct himself or herself within the confines of the law, it surely represents a casual approach to that obligation." *Id.* at 513. Consequently, we found it appropriate to suspend respondent from the practice of law for six

months. In a case decided this term, *Matter of Kinnear,* 105 *N.J.* 391 (1987), respondent had pleaded guilty to a charge of distribution of cocaine. We noted that "[i]n most cases, an attorney convicted of distribution of controlled dangerous substances would be disbarred." *Id.* at 396. However, we concluded that respondent was primarily a drug user and should be disciplined as such. *Id.* Even so, we held that the severity of the offense warranted a suspension from the practice of law for one year, Finally, in *Matter of McLaughlin,* 105 *N.J.* 457 (1987) also decided this term, the Court held that possession of small amounts of a controlled dangerous substance, for personal use only, by members of the bar ordinarily warrants discipline in the form of suspension.[2]

Respondent notes that because the Board rendered its decision on October 2, 1986, it did not have the benefit of this Court's recent opinion in *Matter of Orlando,* 104 *N.J.* 344 (1986). He contends that had the Board rendered its decision subsequent to *Orlando,* it surely would not have recommended a six-months suspension. We disagree with this asserted effect of the *Orlando* decision. There, the Court agreed with the DRB that the failure of the attorney to maintain adequate records was not excusable. *Id.* at 350. We also determined that respondent had "admitted possession of [2.89 grams] of cocaine, [which] adversely reflected on his fitness to practice law." *Id.* at 349. In their totality, respondent's offenses required an indefinite suspension until he could demonstrate "his fitness to practice law again." *Id.* at 351.

Here, respondent admitted during the plea hearing that he was in possession of 9.5 grams of cocaine, 11 grams of hashish, and 52 grams of marijuana. The record discloses that his use was shared by others and that respondent engaged in bizarre activity, attributable to the influence of a narcotic substance.

---

[2]In *McLaughlin, supra,* 105 *N.J.* 457, the circumstances of that case led us to conclude that the issuance of a public reprimand would be the appropriate discipline.

Also, respondent had been involved in at least one other incident involving drugs, evidenced by an arrest approximately four months earlier. Finally, respondent's use of drugs was not innocuous or casual; he attributes his severe personal, professional and business difficulties to "involvement in drugs."

Respondent's drug-related offenses are comparable to, if not more serious than, the offenses described in *Kinnear* and *Orlando.* We are satisfied that respondent has violated his duty as an attorney to uphold and honor the law. *See Matter of Bricker, supra,* 90 *N.J.* at 11. Surely, any lawyer who knowingly engages in criminally-proscribed conduct, such as possession of narcotics, must be aware of the professional jeopardy to which he is exposed by such activity. *See, e.g.,* cases discussed in *Annotation, Narcotics Conviction as Crime of Moral Turpitude Justifying Disbarment or Other Disciplinary Action Against Attorney,* 99 *A.L.R.*3d 288.

The Board also found that respondent made a false statement on the Federal Firearm Transaction Record when he stated that he was not an unlawful user of drugs. Respondent's guilty plea is conclusive evidence of this offense.[3] Nevertheless, the underlying facts and surrounding circumstances further inform us about the gravity of this crime. As noted, respondent had been arrested, and later indicted, for possession of quaaludes on February 18, 1981. Subsequently, on June 6, 1981, respondent signed the federal gun-purchase application form. Two weeks later, when police went to respondent's home to investigate the circumstances that gave rise to the criminal charges and these ethics offenses, they discovered a substantial variety of illegal drugs. Moreover, in the course of the ensuing criminal proceedings, and throughout these disciplinary proceedings, respondent has repeatedly alluded to his personal and profes-

---

[3]As noted, respondent is currently seeking to set aside this conviction. *Supra* at 641 n. 1.

sional downfall, which was caused by his "involvement in drugs." The inference is clear that respondent was a user—that is, an abuser—of drugs. The underlying facts lend added substance to the conclusive effect of the guilty plea that respondent lied when he answered "no" to the question whether he was an unlawful user of drugs.

It cannot be overstressed that a false certification by an attorney is a serious ethics offense. It is a crime of dishonesty warranting stern discipline. In *Matter of Labendz*, 95 *N.J.* 273 (1984), the Court suspended for one year an attorney who filed, on behalf of a client, a fraudulent loan application that falsely inflated the purchase price of a new home from $100,000 to $107,000. *See also Matter of McNally*, 81 *N.J.* 304 (1979) (two-year suspension imposed on an attorney found guilty of falsifying and fraudulently witnessing a deed of foreclosure); *Matter of Kushner, supra*, 101 *N.J.* 397 (knowingly false certification to a court to enable attorney to avoid personal liability as guarantor of promissory notes, which was basis of guilty plea to the fourth-degree crime of false swearing, resulted in three-year suspension from practice); *Matter of Rospond*, 87 *N.J.* 572 (1981) (two-year suspension of attorney who pleaded guilty to two counts of false swearing); *Matter of Silverman*, 80 *N.J.* 489 (1979) (attorney suspended from practice for a period of eighteen months for filing false answers on behalf of client); *Matter of Schleimer*, 78 *N.J.* 317 (1978) (one-year suspension for attorney who gave false deposition testimony as to character of a check and pleaded guilty to false swearing).

Furthermore, the State and the public have a significant interest in the lawful purchase and use of firearms. A false certification in conjunction with a firearm purchase undermines the proper conduct of those regulatory bodies charged with safeguarding this vital interest. In the present case, respondent knowingly filed a false certification claiming that he was not an unlawful user of narcotic drugs; as a result of this false certification he was allowed to purchase a rifle and a shot gun. Respondent's conduct constituted a crime of dishonesty. A

lack of honesty is a serious character flaw, intolerable in the professional makeup of an attorney. *See Application of Matthews,* 94 *N.J.* 59 (1983). Under the circumstances, we have no doubt that respondent's offense warrants discipline greater than a private reprimand.

## III.

In an attorney ethics case, the discipline to be imposed must accord with the seriousness of the misconduct in light of relevant circumstances. *Matter of Nigohosian,* 88 *N.J.* 308, 315 (1982). Respondent stands convicted of two separate serious offenses. One is possession of cocaine, hashish, and marijuana, which is classified as a high misdemeanor under the New Jersey Controlled Dangerous Substance Act, and which can result in five years imprisonment and a $15,000 fine. *N.J.S.A.* 24:21–20a(1). The other is falsifying the certification required to purchase firearms. *N.J.S.A.* 2C:39–10c. Respondent's criminal convictions conclusively demonstrate that he is guilty of the charged ethics violations. Moreover, the underlying facts indicate that each of these offenses was purposeful. Clearly, respondent has engaged in "illegal conduct that adversely reflects on his fitness to practice law" and conduct involving "dishonesty, fraud, deceit and misrepresentation." *DR* 1–102(A)(3) and (4), now *RPC* 8.4.

We acknowledge that mitigating factors must be considered in assessing attorney discipline. In this regard, the Board evaluated "respondent's character and the likelihood that he will engage in similar activities in the future." *Matter of Sears,* 71 *N.J.* 175, 200 (1976). The Board also considered "whether in the totality of the circumstances, respondent has demonstrated that his ethical deficiencies are intractable and irremediable." *Matter of Templeton,* 99 *N.J.* 365, 376 (1985). We have also carefully considered mitigating factors. We note, further, that respondent's offenses did not benefit him financially or harm a client or undermine the administration of

justice. Respondent has no disciplinary history and his misconduct was not directly related to the practice of law. He apparently has placed himself back on the track of professionalism and responsibility, and he still enjoys the esteem of professional colleagues. While these factors mitigate the gravity of the ethics violations, they do not excuse them.

Accordingly, we order that respondent be suspended from the practice of law for six months for the ethics violation evidenced by the drug-possession conviction and for a further three months for the ethics violation related to the false firearms-purchase certification conviction. Respondent shall reimburse the Ethics Financial Committee for appropriate administrative costs.

## ORDER

It is ORDERED that DAVID J. PLEVA of PARSIPPANY, who was admitted to the bar of this State in 1968, be suspended from the practice of law for a period of nine months, effective June 22, 1987, and until the further order of this Court; and it is further

ORDERED that DAVID J. PLEVA reimburse the Ethics Financial Committee for appropriate administrative costs; and it is further

ORDERED that DAVID J. PLEVA be restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that DAVID J. PLEVA comply with Administrative Guideline Number 23 of the Office of Attorney Ethics dealing with suspended attorneys.

WITNESS, the Honorable Robert N. Wilentz, Chief Justice, at Trenton, this 4th day of June, 1987.

*For suspension*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN and GARIBALDI—6.