IN THE MATTER OF MARK L. STANTON, AN ATTORNEY AT LAW.

May 24, 1988.

## ORDER

The Disciplinary Review Board having filed a report with the Supreme Court recommending that MARK L. STANTON, of PISCATAWAY, who was admitted to the Bar of this State in 1960, be suspended from the practice of law for a period of six months, and good cause appearing;

It is ORDERED that the findings of the Disciplinary Review Board are hereby adopted and respondent is suspended for six months, effective June 15, 1988; and it is further

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with this order and the full record of the matter, be added as a permanent part of the file of said MARK L. STANTON as an attorney at law of the State of New Jersey; and it is further

ORDERED that MARK L. STANTON be and hereby is restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that respondent comply with Administrative Guideline No. 23 of the Office of Attorney Ethics dealing with suspended attorneys; and it is further

ORDERED that MARK L. STANTON reimburse the Ethics Financial Committee for appropriate administrative costs.

## APPENDIX

### *Report and Recommendation of the*
### *Disciplinary Review Board*

To the Honorable Chief Justice and Associate Justices of the Supreme Court of New Jersey.

This matter is before the Board on a Motion for Final Discipline Based Upon a Criminal Conviction filed by the Office of Attorney Ethics (OAE). This is based on respondent's guilty plea to a violation of *N.J.S.A.* 24: 21–20(a)(1), possession of a controlled dangerous substance, cocaine.

On January 31, 1986, respondent visited Harrisa and Lawrence Pianka at their home in East Brunswick. He stated that his purpose was specifically to review with the Piankas a real estate contract for the sale of their home. Upon his arrival he accompanied the Piankas to an upstairs bedroom, where he saw cocaine. Respondent knew that based upon his relationship with the Piankas, he could have taken a small quantity for personal use. He "intended to use it." (PT10–3).[1] Before he could do so, however, police officers entered the home and respondent was arrested.

The police officers' entry into the Piankas' home resulted from a two and a half month investigation by the Narcotics Strike Force, which included surveillance of the traffic in and out of the home and a wiretap of the telephones within the home. Respondent was a frequent caller and visitor.

Respondent subsequently pleaded guilty to constructive possession of a small quantity, less than one gram, of cocaine. He acknowledged that he planned to use the cocaine. Following respondent's intent on the record to enter a guilty plea to the above count, the court elected to reserve decision in order to contemplate the matter and await developments in the cases then pending against the Piankas, two of respondent's codefendants. Approximately one month later, on May 29, 1987, the court accepted respondent's guilty plea.

On September 14, 1987, respondent appeared for sentencing. The court noted that respondent was a first offender, who was, accordingly, entitled to the presumption against incarceration. The court further noted respondent's ten-year period of drug abuse, although he had apparently remained drug-free for eight weeks immediately prior to sentencing. Moreover, although there was a risk of further offenses because of respondent's drug dependency, the court believed respondent would respond

---

[1] PT denotes the transcript of the plea hearing the Hon. Barnett E. Hoffman, J.S.C., on May 1, 1987.

favorably to probation, provided he participated in an out-patient counselling program. Lastly, although "being a lawyer cuts both ways," the court noted respondent's reputation throughout the courthouse as a good and capable attorney "who represents somebody well." (ST12–6 to 7; ST 12–5).[2] The court sentenced respondent to a three-year term of probation, with the special condition that respondent continue in an out-patient drug treatment or monitoring program, as determined by the probation department. Additionally, the court fined respondent $5000 as a deterrent. Finally, the court ordered respondent to perform 200 hours of community service.

On December 4, 1987, the OAE filed the within Motion for Final Discipline. The OAE seeks a term of suspension. Respondent acknowledges the criminality of his action, but seeks a public reprimand.

## CONCLUSION AND RECOMMENDATION

A criminal conviction is conclusive evidence of respondent's guilt in disciplinary proceedings. *Matter of Kinnear,* 105 *N.J.* 391, 393 (1987); *Matter of Goldberg,* 105 *N.J.* 278, 280 (1987); *Matter of Tuso,* 104 *N.J.* 59, 61 (1986); *In re Rosen,* 88 *N.J.* 1, 3, (1981); *R.* 1:20–6(b)(i). Therefore, no independent examination of the underlying facts is necessary to ascertain guilt. *In re Bricker,* 90 *N.J.* 6, 10 (1982). The only issue to be determined is the quantum of discipline to be imposed. *Matter of Goldberg, supra,* 105 *N.J.* at 280; *Matter of Kaufman,* 104 *N.J.* 509, 510 (1986); *Matter of Kushner,* 101 *N.J.* 397, 400 (1986); *In re Infinito,* 94 *N.J.* 50, 56 (1983).

"[A]ny lawyer who knowingly engages in criminally-proscribed conduct, such as possession of narcotics, must be aware of the professional jeopardy to which he is exposed by such activity." *Matter of Pleva,* 106 *N.J.* 637, 644 (1987). Respon-

---

[2]ST denotes the transcript of the sentencing proceeding before the Hon. Barnett E. Hoffman, J.S.C., on September 14, 1987.

dent's conviction for possession of cocaine clearly and convincingly demonstrates he engaged in a criminal act that reflected adversely on his fitness to practice law, in violation of *RPC* 8.4(b).

The illegal activity underlying respondent's conviction is not related to the practice of law. *See Matter of Kinnear, supra,* 105 *N.J.* at 395. Nonetheless, good moral character is a basic condition for membership in the bar. *In re Gavel,* 22 *N.J.* 248, 266 (1956). Any misbehavior, private or professional, which reveals lack of the good character and integrity essential for an attorney, constitutes a basis for discipline. In re *LaDuca,* 62 *N.J.* 133, 140 (1973). That respondent's activities did not arise from a lawyer-client relationship, that his behavior was not related to the practice of law or that this offense was not committed in his professional capacity is immaterial. *In re Suchanoff,* 93 *N.J.* 226, 230 (1983); *In re Franklin,* 71 *N.J.* 425, 429 (1976).

Respondent acknowledged use of cocaine for the past ten years, but claimed it was only on a "recreational" basis. The evidence submitted to support the drug raid by law enforcement officials on January 31, 1986, belies respondent's contention. The surveillance preceding respondent's arrest demonstrated that for several months respondent had been a frequent, even daily, visitor of and communicator with the Piankas. He apparently ingested cocaine two to three times a day during that time. When he began experimenting with cocaine, he probably did use the drug on a recreational basis. However, he ultimately succumbed to its lure. He free-based several times. By the time of his arrest, he was addicted to cocaine. His case "is a modern American tragedy." *Matter of Romano,* 104 *N.J.* 306, 309 (1986). Moreover, respondent was not an inexperienced young attorney at the time of his criminal activities; he was admitted to the bar in 1960 and had been practicing for 27 years prior to this incident. But lawyers "are not

immune from the dangers of drug addiction." *Matter of Kinnear, supra,* 105 *N.J.* at 391. The Board concludes respondent was a drug abuser who flouted the law in his efforts to obtain the illegal drug to support his habit. His actions adversely reflected on his fitness as a lawyer. *RPC* 8.4(b).

Nonetheless "disciplinary determinations are necessarily fact-sensitive." *Matter of Kushner, supra,* 101 *N.J.* at 400. The seriousness of the ethical infractions in light of all relevant circumstances must be considered when determining the quantum of discipline to be imposed. *In re Nigohosian,* 88 *N.J.* 308, 315 (1985). Not only should consideration be given to the nature and severity of the offense and the relationship of the offense to the practice of law, but factors that mitigate the damage an attorney's misconduct has caused must be considered. These include "the attorney's good reputation, his prior trustworthy professional conduct, and his general good character." *In re Infinito, supra,* 94 *N.J.* at 57 (1983). *Accord Matter of Kinnear, supra,* 105 *N.J.* at 393; *Matter of Kaufman, supra,* 104 *N.J.* at 514.

No other ethical infraction has been sustained against respondent in his 27–year legal career. At sentencing the court noted that respondent had a good reputation as a capable lawyer "who represents somebody well." Respondent has been active professionally and in his community for many years. He served as president of the Middlesex County Bar Association from 1972 to 1973, after having held other offices within that organization. He co-chaired the New Jersey State Bar Association's Judicial Selection Committee. He was a founder, legal advisor and trustee of the Middlesex–Somerset Multiple Sclerosis Society. He founded the Piscataway Chamber of Commerce in 1966 and served as legal advisor from 1966 to 1982. He was an officer and legal advisor to the Middlesex County Society for the Prevention of Cruelty to Animals, legal advisor to the Edison Library Association from 1961 to 1962, legal advisor to

the Piscataway Police Benevolent Association and member and contributor to the 200 Club of Somerset County since 1981.

Moreover, the record does not demonstrate a series of convictions. *Cf. Matter of Kaufman, supra,* 104 *N.J.* at 513 (two separate incidents within four months resulted in a six-month suspension). Neither does the record demonstrate that this respondent profited from the illegal drug traffic which preys upon our society. *Cf. Matter of Goldberg, supra,* 105 *N.J.* at 282. (respondent's participation in a major criminal narcotics conspiracy resulted in disbarment). Respondent was solely a drug user. *See Matter of Kinnear, supra,* 105 *N.J.* at 396. Most importantly, the record reveals no evidence of diversion of client's funds to support his own drug addiction. *Matter of Romano, supra,* 104 *N.J.* at 310.

In weighing aggravating and mitigating factors, the Board believes that in the totality of the circumstances, respondent has not demonstrated that "his ethical deficiencies are intractable and irremediable." *Matter of Templeton,* 99 *N.J.* 365, 376 (1985). His offense did not benefit him or cause financial harm to any client. He has "apparently placed himself back on the track of professionalism and responsibility," as attested by the many letters from his colleagues, and still enjoys a good professional reputation. *Matter of Pleva, supra,* 106 *N.J.* at 647. Although these factors mitigate the gravity of his misbehavior, they simply cannot excuse it entirely. "Our society unequivocably condemns the abuse of drugs." *Matter of Kinnear, supra,* 105 *N.J.* at 395.

Accordingly, a seven-member majority of the Board recommends respondent be suspended from the practice of law for six months. Two members would impose a one-year suspension. The Board further recommends respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.