IN THE MATTER OF ALBERT L. PEIA, AN
ATTORNEY AT LAW.

Argued June 2, 1988—Decided August 5, 1988.

*Richard J. Engelhardt,* Deputy Ethics Counsel, argued the cause on behalf of Office of Attorney Ethics.

*Albert L. Peia* argued the cause *pro se.*

PER CURIAM.

This is an attorney-disciplinary case. The respondent is Albert L. Peia, who was admitted to the Bar of the State of New Jersey in 1981. An indictment was returned by the Monmouth County Grand Jury on October 7, 1986, charging respondent with possession of cocaine in violation of *N.J.S.A.* 24:21–20. On May 11, 1987, pursuant to a plea bargain, respondent entered a guilty plea to the charge and the State recommended the dismissal of two municipal complaints. Respondent was sentenced on June 19, 1987. He received a two-years probationary term, was fined $600, and was ordered to submit to drug evaluation and treatment, if the evaluation determined drug treatment to be necessary.

The case comes before us on an appeal from the Decision and Recommendation of the Disciplinary Review Board (DRB), which heard the matter on a motion for final discipline filed by the Office of Attorney Ethics (OAE) pursuant to Rule 1:20–6.

The basis for the disciplinary proceedings was respondent's criminal conviction for possession of cocaine.

## I

A criminal conviction is conclusive evidence of respondent's guilt in disciplinary proceedings. *R.* 1:20–6(b)(1); *In re Goldberg*, 105 *N.J.* 278, 280 (1987); *In re Tuso*, 104 *N.J.* 59, 61 (1986); *In re Rosen*, 88 *N.J.* 1, 3 (1981). Therefore, no independent examination of the underlying facts is necessary to determine guilt as a basis for establishing a violation of our Rules of Professional Conduct. *In re Bricker*, 90 *N.J.* 6, 10 (1982). The only issue to be determined is the quantum of discipline to be imposed. *E.g., In re Goldberg, supra,* 105 *N.J.* at 280; *In re Kaufman*, 104 *N.J.* 509, 510 (1986); *In re Kushner*, 101 *N.J.* 397, 400 (1986).

The conviction of an attorney for possession of cocaine justifies professional discipline. "[A]ny lawyer who knowingly engages in criminally proscribed conduct, such as possession of narcotics, must be aware of the professional jeopardy to which he is exposed by such activity." *In re Pleva*, 106 *N.J.* 637, 644 (1987). The criminal conviction for this kind of offense thus establishes conclusively the commission of a criminal act that adversely reflects on a person's fitness as an attorney, contrary to Rules of Professional Conduct, § 8.4(b). The extent or quantum of discipline to be imposed, however, is one that should be informed by not only the criminal act that is the subject of the conviction but all the surrounding circumstances as well as any factors that may aggravate or mitigate the severity of discipline.

In this case an instructive record is available. During the plea hearing, respondent admitted to possessing a trace amount of cocaine. The offense occurred on June 15, 1986, in Neptune Township, where respondent was observed by a local police officer slumped over the steering wheel of his parked vehicle, with narcotics on his lap. Respondent admitted to the officer that he had used some nitrous oxide and marijuana earlier in

the evening. A small plastic bag with marijuana was found in respondent's wallet, as well as a vial of cocaine in respondent's jacket. In addition, there was found in his car a variety of drug paraphernalia, including more than nine cartons of nitrous oxide capsules each containing twenty-four capsules, several capsule dischargers, marijuana and pipes.

The probation report reveals that respondent began using marijuana and nitrous oxide while in college in the early 1970s. His use of these drugs occurred primarily on weekends. He claimed to use seven to ten boxes of nitrous oxide a weekend and to smoke one or two joints on a weekend night. According to the report respondent said he began using cocaine three and one-half years ago; he claimed that he uses cocaine only on the weekend and that he used no more than one gram a weekend.

The sentencing proceedings are also relevant. At sentencing, respondent informed the court he had not used any controlled dangerous substance since the entry of his guilty plea. Despite his comment to the court at the plea hearing that he was "sorry for having done so," the sentencing court found a risk that respondent would commit another offense and a need to deter respondent and others from violating the law. In mitigation the court determined that respondent's conduct was the result of circumstances unlikely to recur with drug treatment, that respondent's character and attitude indicated he was unlikely to commit another offense with drug treatment, that respondent is particularly likely to respond affirmatively to probation with drug treatment, that the imprisonment of respondent would create excessive hardship, and that respondent had willingly cooperated with law enforcement authorities. Accordingly, the court concluded that the mitigating factors substantially outweighed the aggravating factors. Hence, the court sentenced respondent to two years probation and a $600 fine; as special conditions, the court directed respondent be evaluated for drug abuse, and if treatment was deemed necessary, respondent should enroll and remain in treatment until medically discharged.

Respondent asserted before the DRB that he did not have a drug problem. He also claimed that he never abused cocaine or any drugs. He expressed the view that nitrous oxide and marijuana "are less deleterious to the brain cells ... than alcohol," which is "legal" and therefore more acceptable. He also asserted that drug usage is widespread, that the use of cocaine was the "chic thing to do," and that "lawyers, prosecutors, and judges, were also doing it." Respondent claimed he had initially been introduced to and obtained illegal drugs from other lawyers. Thereafter he "did not expend a tremendous amount of energy trying to hide the fact that I did what so many people do." Furthermore, the DRB noted, respondent claimed to have been surprised he was convicted of this offense and was "nonplussed over the set of circumstances in light of that endemic and widespread" use of drugs. He said because of the "illegality of the drugs themselves, [which] make[s] them unacceptable," respondent has accepted the fact of his own criminal conviction, but "only to my own circumstances." He claimed to have altered his behavior because of "the result and the consequences and the, obviously the hardship suffered...." He emphasized several times that he should not be punished professionally for his offense, because drug usage is endemic and because he has already been punished criminally.

## II

■■ An attorney is obligated to adhere to the high standard of conduct required of every member of the bar, even when his activities do not directly involve the practice of law. *In re Rutledge*, 101 *N.J.* 493, 498 (1986); *In re Huber*, 101 *N.J.* 1, 4 (1985); *In re Suchanoff*, 93 *N.J.* 226, 230 (1983). Any misbehavior, private or professional, that reveals lack of the good character and integrity essential for an attorney constitutes a basis for discipline. *In re LaDuca*, 62 *N.J.* 133, 140 (1973).

The unlawful possession of a controlled dangerous substance, even for personal use and absent an indication of distribution or

profit to be obtained therefrom, is considered a breach of professional conduct and has resulted in an attorney's suspension from the practice of law. *In re Kaufman, supra,* 104 *N.J.* at 512. This Court has stated that possession of small quantities of controlled dangerous substances "will ordinarily call for suspension." *In re McLaughlin,* 105 *N.J.* 457, 462 (1987).

In such circumstances, the nature of respondent's possession is important and the history of respondent's drug use is a relevant factor in determining the gravity of this breach of ethics. See *In re Pleva, supra,* 106 *N.J.* at 644. We are satisfied from our review of the record that respondent's drug use was not haphazard or accidental, innocuous or casual. Respondent was at the time of his apprehension a long-time drug user. His drug use was quite extensive, involving a number of controlled dangerous substances over a considerable period of time. Respondent's sole prior arrest was for assault. He was accepted into and successfully completed the pretrial intervention program, and the charge was subsequently dismissed. However, eight months after his arrest on the current charge, respondent was again arrested for illegal drug possession. He has since been convicted and sentenced to a probationary term and a fine for that offense.

Respondent has sought to justify his behavior, claiming that drugs were less deleterious than alcohol and that drug usage itself is widespread. Respondent contends that societal values and laws were skewed.

The DRB believed that respondent demonstrated a "total disdain for the law" and that "[r]espondent's remorse is limited to his misfortune for having been caught with illegal substances." The DRB said: "Respondent has placed himself above the law, freely flouting laws with which he disagrees. Such behavior is wholly unacceptable in an attorney. It dishonors the entire profession."

We concur in the DRB's evaluation of the record. We confine our discipline solely to the crime for which a respondent

is convicted. The respondent in this case disclosed that he consciously and purposely violated the criminal laws that proscribe the use of controlled dangerous substances. Respondent's claim of justification is meretricious. His broad allegations of widespread drug abuse have no relevance to his own drug abuse and his violation of the criminal law.

The DRB also considered respondent's attitude and his vague references to the fact that he had knowledge of other attorneys using and distributing illegal substances. Further, it criticized respondent for taking an irresponsible posture in filing *ex parte* affidavits containing rash hearsay presenting wholly unsubstantiated allegations of ethical wrongdoing by others that have nothing whatsoever to do with the charges that are the basis for this disciplinary proceeding.

The DRB recommended that respondent be suspended for a period of one year. It emphasized almost as much as the offense itself respondent's pronounced views critical of the criminal laws relating to controlled dangerous substances. We are not concerned with respondent's right to hold and express personal views of the wisdom or efficacy of our criminal laws. We acknowledge and affirm his right to hold and express such views. Our only concern is with whether respondent, as an attorney, understands fully that he must professionally and personally conform his conduct to the law and in his conduct honor and respect the enforcement of the law. His conviction, the circumstances surrounding his offense, and his attitude disclose that his breach of ethics was not aberrational or inadvertent. Rather, these suggest hostility and insensitivity to the standards that govern the professional conduct of attorneys.

Accordingly, we determine that a nine-months' suspension from the practice of law represents appropriate discipline.

In addition, respondent is to reimburse the Ethics Financial Committee for costs, including, but not limited to, the cost of producing transcripts.

So ordered.

*For suspension*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN—6.

*Opposed*—None.

## ORDER

It is ORDERED that ALBERT L. PEIA of WEST ORANGE, who was admitted to the bar of this State in 1981, be suspended from the practice of law for a period of nine months, effective August 22, 1988, and until the further order of this Court; and it is further

ORDERED that ALBERT L. PEIA reimburse the Ethics Financial Committee for appropriate administrative costs; and it is further

ORDERED that ALBERT L. PEIA be restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that ALBERT L. PEIA comply with Administrative Guideline Number 23 of the Office of Attorney Ethics dealing with suspended attorneys.