IN THE MATTER OF PETER F. SUCHANOFF, AN
ATTORNEY AT LAW.

May 23, 1983.

*Lawrence J. DiStefano, Jr.* argued the cause for the District I Ethics Committee.

*Edwin J. Jacobs, Jr.* argued the cause for the respondent.

### ORDER

The Disciplinary Review Board having filed a report with the Supreme Court recommending that PETER F. SUCHANOFF of AVALON be disciplined for violations of *DR.* 1–102(A)(4) and (6) arising out of his improper utilization of an escrow account of the title company where he was employed, and good cause appearing;

It is ORDERED that the report of the Disciplinary Review Board is hereby adopted and that, substantially for the reasons appearing in that report, PETER F. SUCHANOFF is suspended from the practice of law for a period of three years and until the further order of this Court, effective March 26, 1981; and it is further

ORDERED that respondent reimburse the Administrative Office of the Courts for the administrative costs incurred in this matter, including the production of transcripts; and it is further

ORDERED that respondent continue to be restrained and enjoined during the period of his suspension and that he continue to comply with all the regulations of the Disciplinary Review Board governing suspended, disbarred or resigned attorneys.

### Decision and Recommendation of the Disciplinary Review Board

To the Honorable Chief Justice and Associate Justices of the Supreme Court of New Jersey:

This matter is before the Board based upon a presentment, captioned "Report of the Findings of Hearing Panel" filed by the District I Ethics Committee. The presentment details four instances of improper utilization of an escrow account of the Jersey Commonwealth Abstract Company, where respondent was employed as "settlement clerk".

Respondent began his employment in 1973 following graduation from law school. His employer, the complainant herein, maintained a law office in Avalon, New Jersey and simultaneously acted as agent for Chelsea Title and Guaranty Company, trading as Jersey Commonwealth Abstract Company (hereinafter Commonwealth). Respondent received limited training prior to assuming the bulk of the responsibility for settlements involving Commonwealth, although his employer was available for consultation when necessary.

Over time, respondent's workload increased to a point where he handled between ten and twenty settlements per week. This required that he work about twelve hours per day, six days a week. In 1978, he became a partner in his employer's law firm, and in the title company, although he continued to work exclusively on title company matters.

The four transactions which form the basis for the ethics complaint may be summarized as follows:

## I. DILLER

Respondent, together with his two law partners, purchased property from William J. Diller, Jr., a Stone Harbor realtor for $75,000. $50,000 of that purchase price was secured by a purchase money mortgage taken back by Diller, which was payable in three years or at resale of the property. The purchasers intended and did, indeed, sell that property to a third party within several months of purchase. Although respondent, who acted as settlement clerk at the June 21, 1980 sale, prepared the settlement sheet, reference to the Diller mortgage was erased by respondent. The closing proceeds of $67,214.14 were put into respondent's personal account, and were utilized in other real estate transactions. It was, therefore, necessary for Diller to badger the respondent for several weeks for payment of the $50,000 owed to him. In mid-July, respondent issued a check in that amount from his personal checking account. That check was returned for insufficient funds. When Diller advised respondent's employer of what had occurred, respondent was told to leave the office. Ultimately, respondent reimbursed his employer for the full amount due.

## II. SOUTH RIVER

On May 29, 1979, respondent conducted a closing on the purchase of certain property in Sea Isle City, New Jersey by South River Enterprise, Inc., a Suchanoff family corporation. Since funds were not available from First People's Bank of New Jersey, the proposed mortgagee at the time of closing, respondent issued a $55,000 check from Commonwealth's escrow account without the knowledge or authorization of his then partner. That money was replaced approximately eight months later when First People's Bank granted a mortgage in that amount on the Sea Isle City property.

## III. ALL SEASONS

Respondent conducted a settlement involving All Seasons, a partnership. Monies were to be paid thereafter to the City of

Avalon to clear a municipal assessment. In June of 1979, when the amount of the assessment was determined, one of the partners in All Seasons issued a check for $4,398.19 to the respondent to cover the monies due the municipality. Rather than depositing the check in Commonwealth's escrow account, respondent deposited the money in the title company's operating account, and then drew a check to his own order for $4,398.19. Respondent claimed that he frequently made payments of this nature from his personal account and thereafter reimbursed himself, and by oversight simply failed to pay Avalon. The title company eventually paid the monies due Avalon, and respondent made reimbursement to Commonwealth by conveying his interest in other property, valued at $5,000, to the company.

## IV. STEWART MANOR

Respondent sought to obtain a $20,000 mortgage for purchasers of property in Upper Township from the seller, Stewart Manor, Inc. Although he believed he had obtained a mortgage commitment, the "lender" could not be located at the time of settlement. Respondent then drew a check for $20,000 from Commonwealth's escrow account to complete the transaction. He was later able to locate alternate funding for the purchasers, and replace the Commonwealth monies.

The District I Ethics Committee found that in the absence of a showing of illegal conduct or of conduct prejudicial to the administration of justice, the charged violations of *DR* 1–102(A)(3) and (5) could not be sustained. Similarly, since the monies involved were neither *attorney* trust funds nor funds of clients, *DR* 9–102 was deemed inapplicable. The Committee further found that it was improper for respondent to remove the funds from the escrow account and use them for purposes not originally intended, despite respondent's contention that he believed excess title company escrow funds could be used for investment.

The Committee concluded that respondent had violated *DR* 1–102(A)(4) and (6). The Committee noted that even if respondent was acting as a settlement clerk in these matters, he was an attorney and known in the community as an attorney and was therefore bound to follow the rules of conduct governing attorneys. "His actions were such as bringing disrepute to all lawyers and should be dealt with." Presentment, p. 6.

Although the Committee recommended public discipline, the penalty of disbarment was viewed as being too severe, given respondent's youth, lack of guidance, severe workload and personal problems which beset him at the time of these incidents.

## CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied that the conclusion of the Committee in finding unethical conduct on the part of the respondent is fully supported by clear and convincing evidence. Respondent's conduct constitutes a blatant violation of *DR* 1–102(A)(4) and (6). The Board agrees that *DR* 9–102 is technically not applicable to respondent's conduct since respondent was not acting as an attorney per se while working for Commonwealth. It is, however, undisputed that Commonwealth, and respondent as employee/partner, handled escrow monies and acted in a fiduciary capacity. The misuse of these funds by respondent violated that fiduciary relationship.

It is well settled that an attorney is "... obligated to adhere to the high standard of conduct required of a member of the bar even though his activities did not involve the practice of law". *In re Franklin,* 71 *N.J.* 425, 429. In respondent's case, although respondent may not have been acting as attorney of record in the closing in question, he was known by the parties involved to be an attorney. He was, indeed, a named partner in a law firm in the same relatively small town as the Commonwealth offices. Some reliance on that factor by clients of Commonwealth who were, primarily, real estate brokers was unavoidable. "If an attorney wishes to be a businessman as well as perform the

precise functions of a lawyer, he must act in the transactions with the high standards of his profession.... The fiduciary obligation of the lawyer applies to persons who, although not strictly clients, he has or should have reason to believe rely upon him." *In re Genser,* 15 *N.J.* 600, 606 (1954). *See also, In re Carlsen,* 17 *N.J.* 338 (1955).

The Board considers respondent's misconduct to be extremely serious. At the same time, the Board is cognizant of certain mitigating factors, including his son's illness, an overwhelming workload and concurrent lack of guidance or assistance, as well as the fact that respondent did not gain personally from these transactions, and similarly, no individuals suffered any loss.

The Board therefore recommends that respondent be suspended for a period of 3 years, retroactive to his March 26, 1981 suspension.

The Board further recommends that the respondent be required to reimburse the Administrative Office of the Courts for the appropriate administrative costs, including production of transcripts.

DISCIPLINARY REVIEW BOARD
By: /s/   A. Arthur Davis, 3rd
    A. Arthur Davis, 3rd
    Chairman
DATED: Dec. 3, 1982