IN THE MATTER OF ROBERT J. McALESHER,
AN ATTORNEY-AT-LAW.

July 11, 1983.

*Richard R. Width* appeared on behalf of the District XII Ethics Committee.

The respondent, by his attorney, *Leo Kaplowitz,* waived his appearance before the Board.

## ORDER

This matter coming before the Court on an order to show cause why ROBERT J. McALESHER of LEONIA should not be disbarred or otherwise disciplined for his violation of *DR.* 1–102(A)(5) and (6), and said ROBERT J. McALESHER having waived his appearance before the Court on the return date of the order to show cause, and good cause appearing;

It is ORDERED that the report of the Disciplinary Review Board recommending that respondent be disbarred is hereby adopted; and it is further

ORDERED that ROBERT J. McALESHER be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that ROBERT J. McALESHER be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that respondent comply with all the regulations of the Disciplinary Review Board governing suspended, disbarred or resigned attorneys; and it is further

ORDERED that respondent reimburse the Administrative Office of the Courts for appropriate administrative costs, including production of transcripts.

Decision and Recommendation of the Disciplinary
Review Board

To the Honorable Chief Justice and Associate Justices of the
Supreme Court of New Jersey:

This matter is before the Board based upon a presentment
filed by the District XII Ethics Committee. The Committee
found that respondent had violated numerous disciplinary rules
by the murder of his wife on September 2, 1977 and subsequent
guilty plea to the charge of second degree murder. Disbarment
was strongly recommended despite respondent's claim of miti-
gating circumstances.

At hearing before the District XII Ethics Committee, the
following facts were established:

The respondent married in 1957. He and his wife had three
children over the next five years. In the mid 1960's, both
respondent and his wife developed drinking problems. Appar-
ently respondent's alcoholism contributed to two arrests for
assault and battery against his wife prior to the 1977 murder.
In the fall of 1976, as a result of these arrests, he entered an
alcoholism program at Bergen Pines Hospital. He participated
in that program for 3 months, and thereafter both he and his
wife attended Alcoholics Anonymous meetings. However, early
in 1977, he again began to drink heavily. By August of 1977, he
was drinking constantly, consuming about a quart of alcohol per
day. His wife, too, was again drinking heavily. Respondent
says he became paranoid, and feared everything. At the time of
the murder, he says he perceived that his wife was threatening
his life and he claims that he was acting in self-defense. On
September 2, 1977, the date of the murder, respondent and his
wife had apparently been arguing. Thereafter, while his wife
sat in her automobile in their driveway, respondent walked out
of the house and shot and killed her with a rifle. He then went
back to the house, left the rifle in the kitchen and went back
outside to await the police. He sat on the curb until the police
arrived, and advised them of what he had done. On August 1,

1978, following the State's agreement not to pursue a first degree murder charge, he pleaded guilty to second degree murder pursuant to a plea bargain. Respondent was sentenced on September 29, 1978 to 20 to 25 years in jail. He was released from prison to a halfway house called Pyramid 2 in June of 1982, and was scheduled to be released on parole in December of 1982.

The respondent's position at hearing before the Committee was, first, that *In re Mirabelli,* 79 *N.J.* 597 (1979) which holds that conviction of a crime is conclusive evidence of guilt, should be reappraised in light of respondent's situation; second, the background circumstances at the time respondent murdered his wife indicate that he was not then in full possession of his faculties; and, third, mitigating circumstances should be considered with regard to the penalty to be imposed. Alcoholism was cited as both a mitigating circumstance and as the basis for his argument that he lacked the capacity to appreciate his actions at the time he murdered his wife. As evidence of his rehabilitation, respondent detailed his prison experience for the Committee, including his lengthy physical withdrawal from alcohol and gradual reinvolvement in Alcoholics Anonymous. He attempted to revitalize the AA program at the prison. When released to the halfway house, respondent continued his involvement in alcoholism programs, and began to work with ALCON, a joint product of the National Counsel on Alcoholism and Integrity. The program is intended to assist alcoholics who are either recently released from prison, on parole, on probation or in P.T.I. Respondent indicated that he hoped to serve as an advocate for alternative sentencing to rehabilitative facilities, and could utilize his license to practice law in that regard. Although he realizes that he is not cured of alcoholism, he further stated that he realizes the disastrous consequences of a return to drinking.

The Committee concluded that there is no basis for alteration of *In re Mirabelli, supra.,* particularly since respondent had freely admitted his guilt. The Committee agreed that respon-

dent was not in full possession of his faculties at the time of the murder because of his alcoholism. Nonetheless, the Committee determined that the respondent must be held responsible for his actions as well as for the impairment itself. The Committee further concluded that respondent had engaged in illegal conduct that adversely reflects on his fitness to practice law in violation of *DR* 1–102(A)(3), by murdering his wife, and, further, that his continual drunkenness was in itself conduct adversely reflecting on respondent's fitness to practice law in violation of *DR* 1–102(A)(6).

In considering respondent's claim of mitigating circumstances, the Committee urged that respondent's claims be placed in proper perspective. Although respondent's conduct subsequent to the killing of his wife was termed "very admirable" by the Committee, disbarment was recommended. The Committee's rationale was expressed as follows:

". . a license to practice law is a special privilege requiring the maintenance of high standards. If respondent's subsequent conduct could alter the sanction imposed then we fear that any attorney could commit any act, no matter how grievous, with the assurance that by his subsequent conduct he could return to his former status. Attorneys should have a clear understanding that once a certain line is crossed, there is no turning back. This may seem harsh in some circumstances, but it affords a strong inducement to maintain the high standards of the bar, standards which are necessary to make our system of justice work."

## CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied that the conclusions of the Committee in finding unethical conduct on the part of respondent are fully supported by clear and convincing evidence. *DR* 1–102(A)(5) and (6) were violated. The respondent's crime was reprehensible. It is difficult to imagine a more serious breach of the moral code which governs our society. The respondent, by serving time in prison and by becoming an exemplary citizen, may regain his place in society as a whole. However, he is no longer entitled to hold a license to practice law. That license is a privilege. Once that privilege is violated to such a degree, the issue of rehabilitation is irrele-

vant. Contrary to other types of misconduct, the aggrieved party here cannot be made whole by any action of the respondent. The fact remains that respondent murdered his wife, and subsequently pleaded guilty to that murder. His alcoholism, while undisputed, cannot be considered as a sufficient mitigating factor, nor can his subsequent admirable attempts to again become a functioning member of society soften the required penalty. Disbarment is mandated.

The Board therefore recommends that the respondent be disbarred. The Board further recommends that the respondent be required to reimburse the Administrative Office of the Courts for appropriate administrative costs, including production of transcripts.

DISCIPLINARY REVIEW BOARD

By: /s/ Stephen B. Wiley

Stephen B. Wiley
Vice-Chairman

DATED: March 29, 1983.