657 A.2d 878

IN THE MATTER OF PATRICIA LYNN HASBROUCK,
AN ATTORNEY AT LAW.

Argued January 4, 1995—Decided May 12, 1995.

*Walton W. Kingsbery, III,* Deputy Ethics Counsel, argued the cause on behalf of Office of Attorney Ethics.

*Stephen S. Weinstein,* argued the cause for respondent (*Mr. Weinstein,* attorney; *Mr. Weinstein* and *Peter N. Gilbreth,* of counsel and on the brief).

PER CURIAM.

This is an attorney-disciplinary case in which the attorney's ethics violations are based on the commission of offenses relating to controlled dangerous substances. The Office of Attorney Ethics (OAE) commenced this disciplinary proceeding by filing a motion before the Disciplinary Review Board (DRB), seeking final discipline of respondent, Patricia Lynn Hasbrouck, pursuant to *Rule* 1:20–2 for violating the Rules of Professional Conduct (*RPC*). The motion was based on respondent's arrest and admission into a Pre–Trial Intervention program (PTI) for obtaining a controlled dangerous substance by fraud and for uttering a forged prescription. Although respondent did not plead guilty and was not found guilty of either offense, she stipulated that her conduct had violated *RPC* 8.4(b), commission of a criminal act adversely reflecting on honesty, trustworthiness, or fitness as a lawyer, and *RPC* 8.4(d), conduct prejudicial to the administration of justice. Thus, the sole issue is the appropriate measure of discipline.

The DRB unanimously recommended that respondent be suspended from the practice of law for one year, but that the suspension be suspended while she continue outpatient treatment for one year and be subject to periodic drug testing to confirm that she remain drug free. Under this regime, the DRB recom-

mended that the suspension go into effect only if respondent failed to meet those conditions.

Our independent review of the record leads us to reject the DRB's recommendation of a suspended suspension and order respondent's immediate suspension from the practice of law for one year.

## I

The facts underlying the arrest are not in dispute. Respondent was admitted to practice law in New Jersey in 1981. She has been in private practice in Washington, Warren County.

An unspecified number of years ago, respondent began suffering from migraine headaches. Her father, a physician, prescribed the pain-killing medication, darvocet, for her. Gradually, she started taking the medication more frequently. In 1986, she began taking sheets from her father's prescription pads and forging prescriptions for the drug. At first, respondent had the prescriptions filled only at local pharmacies so the prescription would not be questioned. As she needed to have prescriptions filled more frequently, she traveled greater distances. In 1989, she switched from darvocet to vicodin. When respondent's father retired, his office supplies, including prescription pads, were stored at respondent's home. Respondent wrote prescriptions for herself, not only in her name, but also in the names of her husband and her sister.

On April 12, 1993, respondent was apprehended attempting to have a prescription filled in her sister's name. The pharmacist had called the telephone number on the prescription for verification and learned that respondent's father had been retired for over one year. The pharmacist telephoned the police. Respondent was arrested on that date for violation of *N.J.S.A.* 2C:21–1a(3), uttering a forged prescription, and violation of *N.J.S.A.* 2C:35–13, obtaining a controlled dangerous substance by fraud.

In a statement to the Morris County Prosecutor, respondent admitted the facts underlying the charges. In the criminal proceeding, respondent executed a Waiver of Indictment and was admitted to the PTI program by order dated August 2, 1993. Respondent entered Clear Brook Manor on April 17, 1993, completed the prescribed twenty-eight day program for substance abuse and was discharged on May 15, 1993.

In disciplinary proceedings, respondent admitted that she had violated *RPC* 8.4(b) and (d). The OAE recommended a six-month suspension, based on this Court's decision in *In re Adubato*, 106 *N.J.* 655 (1987). The DRB found, however, that more severe discipline was warranted, and thus recommended a one-year suspension. However, the DRB recommended that the suspension itself should be suspended, finding that "no useful purpose [would] be served by imposing an active suspension on this attorney."

## II

The privilege to practice law is dependant on an attorney's ability to maintain a high moral character. *In re La Duca*, 62 *N.J.* 133, 140, 299 *A.*2d 405 (1973); *In re Gavel*, 22 *N.J.* 248, 266, 125 *A.*2d 696 (1956); *In re Pennica*, 36 *N.J.* 401, 433–34, 177 *A.*2d 721 (1962). Indeed, this requirement inheres in our paramount concern in the administration of attorney discipline for the maintenance of public confidence in the integrity of the bar. *In re Kaufman*, 104 *N.J.* 509, 513, 518 *A.*2d 185 (1986). A criminal conviction is conclusive evidence of an attorney's guilt in disciplinary proceedings. *R.* 1:20–6(b)(1); *In re Kinnear*, 105 *N.J.* 391, 395, 522 *A.*2d 414 (1987). Yet, it is the ethics rules, and not the criminal statutes, that regulate the privilege to practice law in this State. A deviation from those rules can bring about disciplinary measures administered by this Court.

Respondent admitted that she violated *RPC* 8.4(b) and (d). Although respondent was not convicted of a crime, she stipulated that her conduct constituted the commission of a crime. Because

that behavior does not comport with the ethics rules governing attorney conduct, respondent must be disciplined.

Moreover, discipline is proper and will be invoked even though respondent's conduct did not arise from a lawyer/client relationship, that her behavior was not related to the practice of law or that her offense was not committed in her professional capacity. *In re Suchanoff,* 93 *N.J.* 226, 230, 460 *A.*2d 642 (1983); *In re Kinnear, supra,* 105 *N.J.* at 395, 522 *A.*2d 414. Any misbehavior, private or professional, that reveals a lack of good character and integrity essential for a person to practice as an attorney constitutes a basis for discipline. *In re La Duca, supra,* 62 *N.J.* at 140, 299 *A.*2d 405; *In re Gavel, supra,* 22 *N.J.* at 266, 125 *A.*2d 696; *In re Franklin,* 71 *N.J.* 425, 429, 365 *A.*2d 1361 (1976). An attorney is obligated to adhere to the high standard of conduct required by a member of the bar, even though her activities do not involve the practice of law and do not directly affect her clients. *In re Suchanoff, supra,* 93 *N.J.* at 230, 460 *A.*2d 642; *In re Rutledge,* 101 *N.J.* 493, 498, 502 *A.*2d 569 (1986); *In re Huber,* 101 *N.J.* 1, 4, 499 *A.*2d 220 (1985); *In re Franklin, supra,* 71 *N.J.* at 429, 365 *A.*2d 1361.

Thus, although respondent's conduct did not involve the practice of law, she has acted in contravention of the ethical mandates that insist upon the highest moral character from those privileged to be members of the bar. Her acts allegedly did not affect her clients, for she was able to maintain her legal obligations even while she unlawfully forged prescriptions to feed her addiction to pain killers. Nevertheless, respondent's conduct warrants strict disciplinary measures because it calls into question her honesty and integrity, as well as her respect for the law.

III

Every disciplinary case is fact sensitive. *In re Kinnear, supra,* 105 *N.J.* at 395, 522 *A.*2d 414; *In re Litwin,* 104 *N.J.* 362, 366, 517 *A.*2d 378 (1986). The gravity of respondent's conduct lies not only in its evident disregard for the law but also in its

fraudulent and deceptive nature. Dishonest conduct " 'impugns the integrity of the legal system' and destroys 'public trust and confidence' in the law and the legal system.' " *In re Zauber*, 122 *N.J.* 87, 93, 583 *A.*2d 1140 (1991) (citation omitted). Such conduct "places in question the lawyer's integrity and respect for the law." *In re Kaufman, supra*, 104 *N.J.* at 514, 518 *A.*2d 185. Violations of the criminal laws governing controlled dangerous substances that involve fraudulent conduct constitute serious ethics transgressions that justify a stern disciplinary response, *see In re Adubato, supra*, 106 *N.J.* 655; *In re McCarthy*, 119 *N.J.* 437, 575 *A.*2d 434 (1990); *In re Zauber, supra*, 122 *N.J.* 87, 583 *A.*2d 1140, and even disbarment when that conduct is particularly egregious. *See, In re Zauber, supra*, 122 *N.J.* at 93, 583 *A.*2d 1140.

In *Adubato*, a case similar to respondent's, the attorney was disciplined on the basis of being found guilty of a violation of *N.J.S.A.* 24:21–22(a)(3), an attempt to obtain a controlled dangerous substance by fraud. Like respondent, Adubato suffered from migraine headaches for which two physicians prescribed dilaudid. He became addicted to dilaudid. When he no longer had a valid prescription, he resorted to misrepresentation and fraud to obtain the drug. A six-month suspension was imposed.

More severe discipline was imposed in *McCarthy*. McCarthy was found guilty of distribution of a controlled dangerous substance, in violation of *N.J.S.A.* 24:21–19(a)(1), and obtaining a controlled dangerous substance for himself by fraud in violation of *N.J.S.A.* 24:21–22(a)(3). Between April 1982 and May 1984, McCarthy, a practicing psychiatrist, wrote 108 prescriptions for four patients for controlled dangerous substances, without a valid Drug Enforcement Agency number. He further stipulated that, between July 1981 and May 1984, he deceptively wrote seventeen prescriptions, using the names of family or friends, in order to obtain controlled dangerous substances for his personal use. The Court deemed twenty-seven months served, from the date of McCarthy's temporary suspension, to be sufficient discipline, and

ordered reinstatement to practice law be conditioned on medical and psychiatric proofs of fitness.

The DRB here found that

[i]n light of the length of time that respondent's transgressions spanned, the repeated incidents and the careful calculation involved in her fraudulent actions, the Board is of the view that her misconduct falls between that of Adubato and McCarthy. Although the record is not specific, respondent's misconduct extended over years and, although she knew right from wrong, involved the repeated commission of criminal acts. Most significant were respondent's repeated acts of forgery.

The record thus indicates that respondent did not confront her addiction but rather resorted to continuing unlawful and fraudulent measures to maintain her addiction. Such conduct "demonstrate[s] a callous disregard of a lawyer's obligation to conduct himself or herself within the confines of the law, [or at least] a casual approach to that obligation." *Kaufman, supra,* 104 *N.J.* at 513, 518 *A.*2d 185. Respondent's misconduct was more aggravated than that exemplified in *Adubato.* Although Adubato was actually convicted for his criminal misconduct, his action was less egregious than respondent's because it was confined to one attempt to obtain dilaudid. Respondent, on the other hand, took part in fraudulent conduct that covered seven years. Thus, a one-year suspension, as opposed to the six-month suspension ordered in *Adubato,* is appropriate. *See In re Kaufman, supra,* 104 *N.J.* at 513, 518 *A.*2d 185 (finding aggravation in fact that illegal conduct was not an isolated incident).

## IV

The DRB recognized several mitigating factors that weighed in favor of suspending respondent's suspension from practice: (1) that her actions were brought about by her addiction to prescription drugs; and (2) that respondent had overcome her drug addiction to pain-killing medication. However, we cannot under the circumstances invest those factors with much mitigating force.

We have deemed drug addiction to warrant immediate disciplinary measures, *see In re Romano,* 104 *N.J.* 306, 516 *A.*2d 1109

(1986) (attorney disbarred for misappropriating client's funds to support drug habit); *In re Kaufman, supra,* 104 *N.J.* 509, 518 *A.2d* 185 (attorney given six-month suspension for pleading guilty to two criminal indictments for possession of controlled dangerous substances); *In re Orlando,* 104 *N.J.* 344, 517 *A.2d* 139 (1986) (attorney who pleaded guilty to one count indictment for possession of cocaine suspended until such time as could demonstrate fitness); *In re Goldberg,* 105 *N.J.* 278, 520 *A.2d* 1147 (1987) (attorney disbarred for participation in criminal narcotics conspiracy), and continue to hold that drug addiction should not be considered mitigation under these circumstances.

In *Zauber, supra,* the Court considered whether drug addiction can serve as a mitigating factor in a disciplinary case. We held that,

> [a]lthough mitigating factors are relevant to the severity of discipline, ... drug addiction is generally not such a factor ... Moreover, drug addiction, whether to legal or illegal drugs, may not mitigate serious ethical infractions such as misappropriation or crimes involving dishonesty, fraud, deceit or misrepresentation.
>
> [122 *N.J.* at 94, 583 *A.2d* 1140 (citations omitted).]

The DRB also felt that respondent's rehabilitation should be given mitigating weight. Regrettably, respondent sought to achieve rehabilitation only after having been caught in her criminal attempt to satisfy her habit. She has given us no indication that she would have attempted to control her addiction to painkillers if one of her forged prescriptions had not been detected. It was the heavy arm of the law, rather than her own conscience, that convinced respondent to seek help.

We recognize the grave affliction that besets those stricken by the disease of addiction and acknowledge that lawyers are not insulated from the expansive reach of this illness. *See In re Kinnear, supra,* 105 *N.J.* at 394, 522 *A.2d* 414. We appreciate also the difficult path of treatment and self-deprivation that must be traveled on the way to recovery. This Court looks to aid attorneys who attempt to better their lives by seeking help and eventual recovery. We acknowledge that there was not available to respondent when she succumbed to her addiction a program to

assist an attorney suffering from substance abuse before the attorney has committed serious ethics violations. *See RPC* 8.3 (providing limited confidentiality for any disclosures made by an attorney under the Lawyers Assistance Program, which provides assistance and counselling for lawyers suffering from substance abuse). The fragility of a recovering addict, the constant peril of temptation, and the continuing risk of relapse attend the never-ending struggle for genuine rehabilitation. We thus understand that a state of recovery is enormously hard for a seriously addicted person to achieve and maintain. *E.g.,* 139 *N.J.L.J.* 836 (February 27, 1995) (reporting that respondent was recently arrested as a suspect in a series of doctors' offices burglaries committed in order to steal pain-killers); *see Consent Order for Temporary Suspension of Patricia Lynn Hasbrouck,* (March 16, 1995), 4 *NJL* 643 (March 27, 1995).

■■ Nevertheless, we acknowledge that often rehabilitation becomes possible only after an addict has "hit rock bottom." We thus recognize that an addicted attorney's rehabilitation, even though initiated only after apprehension for criminal violations, may be taken into account as a basis for accelerating discipline, although it will not obviate discipline. *See, e.g., In re Schaffer,* 140 *N.J.* 148, 657 *A.*2d 871 (1995) (also decided today). Concern for the recovering addict impels us to accelerate the discipline for addicted attorneys guilty of offenses involving basically their own personal use of controlled dangerous substances, who genuinely and immediately seek to enroll in a rehabilitation program in order to recover. However, we do not envisage that form of discipline to be available or appropriate for a respondent whose ethics infractions are based on more serious CDS offenses or involve a combination of CDS offenses and misconduct entailing fraud, deception and the like.

■ The Court's central concern in the administration of attorney discipline is not to punish the attorney, but to promote public confidence in the integrity of the bar. *In re Kinnear, supra,* 105 *N.J.* at 397, 522 *A.*2d 414; *In re Kushner,* 101 *N.J.* 397, 400, 502

*A*.2d 32 (1986). In this case, however, the Board recommends the suspension of any suspension from the practice of law to be imposed on respondent. That discipline, in practical effect, is far short of that imposed in similar cases and could well lead the public to perceive that no substantial discipline was imposed upon an attorney who committed two criminal offenses, one based on dishonesty, to maintain her addiction to controlled dangerous substances.

█ Balancing those various considerations in this case, we conclude that the circumstances call for a one-year suspension from the practice of law as appropriate discipline.

In addition, respondent is to reimburse the Disciplinary Oversight Committee for costs, including but not limited to the cost of producing transcripts.

So ordered.

*For Suspension*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.

### ORDER

It is ORDERED that **PATRICIA LYNN HASBROUCK** of **WASHINGTON,** who was admitted to the bar of this State in 1981 and who was thereafter temporarily suspended from the practice of law by consent on March 16, 1995, and who remains suspended at this time, is hereby suspended from the practice of law for a period of one year, effective immediately, and until further Order of the Court; and it is further

ORDERED that respondent be restrained and enjoined from practicing law during the period of her suspension and that she continue to comply with *Rule* 1:20–20, which governs suspended attorneys; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs incurred in the prosecution of this matter.