657 A.2d 871

IN THE MATTER OF STEVEN M. SCHAFFER,
AN ATTORNEY AT LAW.

Argued January 4, 1995—Decided May 12, 1995.

*John McGill, III,* Deputy Ethics Counsel, argued the cause on behalf of Office of Attorney Ethics.

*Steven M. Schaffer* argued the cause *pro se.*

PER CURIAM.

In this attorney-disciplinary case, respondent, Steven M. Schaffer, was arrested and charged for the unlawful possession of cocaine, the unlawful possession of drug paraphernalia, and being under the influence of cocaine. He ultimately admitted that he had committed those offenses. He also admitted that his conduct constitutes a violation of the Rules of Professional Conduct, specifically *RPC* 8.4(b), in that his knowing and intentional possession and use of illegal drugs was a criminal act that reflects adversely on his fitness to practice law. Respondent waived the filing of a formal ethics complaint and waived a formal hearing before the District Ethics Committee. He agreed that the matter should proceed directly before the Disciplinary Review Board (Board or DRB) for its review, for the sole purpose of determining the

extent of final discipline to be imposed. The matter was presented to the DRB on a stipulation between respondent and the Office of Attorney Ethics (OAE).

## I

■ Because the ethics violations are admitted, the focus of this disciplinary proceeding is on the extent of discipline. *In re Goldberg,* 105 *N.J.* 278, 280, 520 *A.*2d 1147 (1987); *In re Kaufman,* 104 *N.J.* 509, 510, 518 *A.*2d 185 (1986); *In re Kushner,* 101 *N.J.* 397, 400, 502 *A.*2d 32 (1986). Determining the appropriate measure of discipline, however, is extremely fact-sensitive. *In re Kinnear,* 105 *N.J.* 391, 395, 522 *A.*2d 414 (1987); *In re Litwin,* 104 *N.J.* 362, 366, 517 *A.*2d 378 (1986).

Respondent was admitted to the New Jersey Bar in 1986. He had an office in Fort Lee, Bergen County, New Jersey. The DRB recites the details of respondent's offenses according to the stipulation, *viz:*

> On August 5, 1991, at approximately 11:50 p.m., Fort Lee police officers observed an automobile being operated at a speed lower than that of the surrounding traffic. The automobile was operated by respondent. After disregarding a stop sign and making a right turn without signaling, the automobile came to a stop. Respondent exited the automobile and entered the office of the Toll Gate Motel. One of the police officers parked his car next to respondent's and observed him in the motel office. Respondent did not register at the motel. When he came out, the police officers stopped him and identified themselves.

> It was immediately apparent to the police officers that respondent was under the influence of a controlled dangerous substance (CDS). Respondent was advised that he was being placed under arrest for being unlawfully under the influence of a CDS and was also advised of his rights. Respondent then began to back up, at which time the officers grabbed his shirt to prevent him from fleeing. At this juncture, two small plastic vials fell to the floor. One of the police officers seized the two items. The officer suspected them to be CDS. Respondent told one of the officers to wait a minute, placed his right hand in the pocket of his pants and retrieved a glass crack (cocaine) pipe, which he handed to one of the officers. Respondent then stated to the police officers that, if they arrested him, they would be ruining his life. He assured them that, if they let him go, in the morning he would admit himself into an in-patient program for his drug dependency. He further stated to the officers that he was an attorney and asked that the officers release him from custody. His requests were denied. At that point, respondent admitted that he had been using crack cocaine all night and had left his apartment

to prevent a problem with his mother. He further stated that he was beginning to feel the full effects of the cocaine. His face became pale and he requested that he be permitted to sit down because he feared that he would pass out. The police Command Center was called and medical assistance was requested. Respondent was transported to Englewood Hospital for observation and for medical treatment for his admitted abuse of the CDS crack cocaine.

While at Englewood Hospital, one of the police officers located a plastic transparent vial on the hospital bed on which respondent was lying. The vial contained a whitish chalk substance, which the officer suspected to be CDS. The officer had observed the item lying on top of the bed sheets, while in the process of escorting respondent to the bathroom. During the time that respondent was observed on the hospital bed, the officer saw him go into his pants several times, near his groin area. The officer also took a urine sample from respondent at the hospital.

Respondent was charged with unlawful possession of cocaine, in violation of *N.J.S.A.* 2C:35–10a(1), a third degree crime. He was also charged with unlawful possession of drug paraphernalia, in violation of *N.J.S.A.* 2C:36–2, and with being unlawfully under the influence of a controlled dangerous substance, in violation of *N.J.S.A.* 2C:35–10b, both disorderly persons offenses. In addition, respondent was charged with the motor vehicle offense of possession of a CDS in a motor vehicle, in violation of *N.J.S.A.* 39:4–49.1.

On February 20, 1992, respondent appeared before the municipal court and applied for a conditional discharge under *N.J.S.A.* 2C:36A–1. The municipal court placed respondent on probation for a period of six months. On March 20, 1992, respondent was accepted into the Pre–Trial Intervention Program (PTI). On October 6, 1992, after respondent satisfied the terms and conditions of the PTI program, the complaints against respondent were dismissed, pursuant to *N.J.S.A.* 2C:36A–1. As noted, respondent admitted the commission of the offenses, seeking only to preserve his right to be heard with respect to the extent of discipline.

On the issue of discipline respondent submitted evidence relating to his rehabilitation. The DRB noted the Certification and Medical Report of Arthur Greenberg, a certified psychiatric social worker and a clinician and supervisor at Metropolitan Medical Group, P.C., and the Director of Treatment for Adult and Adoles-

cent Dual Diagnosis Units at Regent Hospital, in New York. According to Mr. Greenberg's certification, respondent was admitted to the Metropolitan Medical Group Outpatient Treatment Center at Regent Hospital on August 18, 1991, twelve days after his arrest. Mr. Greenberg stated:

> Mr. Schaffer understood that his conduct, substance abuse, and arrest, had brought him to a point where he was about to lose all that he had worked for his entire life, including but not limited to, his license to practice law and career. Mr. Schaffer expressed clearly that he desired to engage in a program for treatment of alcohol and substance abuse to take the steps and action necessary to save his life and career.

The DRB found that from August 18, 1991 through January 1, 1993, respondent attended regularly scheduled group treatment twice a week, as well as an individual session in the hospital's substance abuse treatment program. Respondent also provided urine specimens two to three times a week as part of the treatment program. Further, he tested free from alcohol and all mood-altering substance during the treatment program. In addition, the urinalysis test results from the hospital's treatment program were provided to the supervisor of the Bergen County PTI program before the entry of the March 20, 1992 order of dismissal, as well as on April 27, 1992 and August 6, 1992.

Respondent, according to Mr. Greenberg's certification, also attended regular Alcoholics Anonymous ("AA") meetings from August 18, 1991 through January 1, 1993. Respondent, at the request of the DRB, submitted a certification stating that he has been drug-free from August 18, 1991 to date.

## II

The privilege to practice law is founded on high moral character. *In re La Duca,* 62 *N.J.* 133, 140, 299 *A.*2d 405 (1973); *In re Pennica,* 36 *N.J.* 401, 433–34, 177 *A.*2d 721 (1962); *In re Gavel,* 22 *N.J.* 248, 266, 125 *A.*2d 696 (1956). Indeed, this requirement inheres in our paramount concern in the administration of attorney discipline for the maintenance of public confidence in the integrity of the bar. *In re Kaufman, supra,* 104 *N.J.* at 513, 518

A.2d 185. A criminal conviction evidences a fundamental disrespect for law and is conclusive evidence of an attorney's guilt in disciplinary proceedings, *R.* 1:20–6(b)(1); *In re Kinnear, supra,* 105 *N.J.* at 395, 522 *A.*2d 414.

Discipline for ethics transgressions is not obviated or lessened because an attorney's conduct did not involve the practice of law or arise from a lawyer/client relationship. Offenses that evidence ethical shortcomings, though not committed in the attorney's professional capacity, may, nevertheless, warrant discipline. *In re Hasbrouck,* 140 *N.J.* 162, 167, 657 *A.*2d 878 (1995) (citing *In re Suchanoff,* 93 *N.J.* 226, 230, 460 *A.*2d 642 (1983); *In re Kinnear, supra,* 105 *N.J.* at 395, 522 *A.*2d 414). Misconduct, whether private or professional in nature, that evidences a want of the good character and integrity that are essential for a person to engage in the practice of law constitutes a basis for discipline. *In re Franklin,* 71 *N.J.* 425, 429, 365 *A.*2d 1361 (1976); *In re La Duca, supra,* 62 *N.J.* at 140, 299 *A.*2d 405; *In re Gavel, supra,* 22 *N.J.* at 266, 125 *A.*2d 696. The obligation of an attorney to maintain the high standard of conduct required by a member of the bar applies even to activities that may not directly involve the practice of law or affect his or her clients. *In re Suchanoff, supra,* 93 *N.J.* at 230, 460 *A.*2d 642; *In re Rutledge,* 101 *N.J.* 493, 498, 502 *A.*2d 569 (1986); *In re Huber,* 101 *N.J.* 1, 4, 499 *A.*2d 220 (1985); *In re Franklin, supra,* 71 *N.J.* at 429, 365 *A.*2d 1361. The Court's central concern in the administration of attorney discipline is not to punish the attorney, but, more broadly, to promote public confidence in the integrity of the bar. *In re Kinnear, supra,* 105 *N.J.* at 397, 522 *A.*2d 414; *In re Kushner, supra,* 101 *N.J.* at 400, 502 *A.*2d 32.

We have determined that offenses attributable to drug addiction may warrant strong disciplinary measures, *see In re Hasbrouck, supra,* 140 *N.J.* 162, 657 *A.*2d 878 (imposing one year suspension on attorney for pleading guilty to criminal charges involving false prescriptions for CDS); *In re Kaufman, supra,* 104 *N.J.* 509, 518 *A.*2d 185 (imposing six month suspension on attorney

for pleading guilty to two criminal indictments for possession of controlled dangerous substances); *In re Orlando*, 104 *N.J.* 344, 517 *A.*2d 139 (1986) (suspending attorney who pleaded guilty to one count indictment for possession of cocaine until such time as could demonstrate fitness). We continue to hold that drug addiction that gives rise to criminal and ethics offenses should not be considered mitigation. *In re Goldberg, supra*, 105 *N.J.* 278, 520 *A.*2d 1147 (disbarring attorney for participation in criminal narcotics conspiracy notwithstanding drug addiction); *In re Romano*, 104 *N.J.* 306, 516 *A.*2d 1109 (1986) (disbarring attorney for misappropriating client's funds to support drug habit). In *In re Zauber*, the Court considered whether drug addiction can serve as a mitigating factor in a disciplinary case. We held that,

> [a]lthough mitigating factors are relevant to the severity of discipline, ... drug addiction is generally not such a factor ... Moreover, drug addiction, whether to legal or illegal drugs, may not mitigate serious ethical infractions such as misappropriation or crimes involving dishonesty, fraud, deceit or misrepresentation.
>
> [122 *N.J.* 87, 94, 583 *A.*2d 1140 (1991) (citations omitted).]

The OAE requested that respondent be suspended for a period of three months, relying on *In re Nixon*, 122 *N.J.* 290, 585 *A.*2d 322 (1991). However, the DRB was "convinced that to impose a three-month suspension would serve no other purpose but to punish respondent." Accordingly, a majority of the Board recommended that respondent receive a suspended three-month suspension.

The reasons that persuaded a majority of the Board to impose a suspended suspension were:

> Numerous compelling mitigating circumstances have persuaded the Board that respondent should not be actively suspended for three months. At the Board hearing, respondent sincerely expressed his deep regret for the shame he has brought on his professional colleagues and his family, for which he sincerely apologized. Respondent explained that, at the time of his misconduct, he did not recognize how ill he was and did not understand the seriousness of his offenses. Respondent pointed to the prompt and extensive remedial action that he undertook immediately after his arrest, including participation in a drug and alcohol rehabilitation program for one and one-half years, and regular attendance at AA meetings. To this date, respondent participates in AA meetings three or four times a week.

Moreover, respondent's conduct occurred three years ago and, according to him, has completely changed his life. Respondent contended that, without this change, he would probably have died. He also informed the Board that his work and productivity have increased greatly since his recovery and that his career as an attorney is his whole life.

The DRB believed that a suspended sentence
would accomplish the purpose of continued notice to the bar that this type of conduct will be met with a suspension in all but the most compelling cases and, at the same time, give recognition to respondent's heroic efforts to rehabilitate himself. It would also permit him to continue to serve the profession without unnecessary disruption.

We disagree with the approach taken by the DRB in this case.

 This Court has authorized the suspension of a disciplinary suspension of an attorney in only one situation. That is where the infractions of the attorney themselves did not warrant discipline more severe than a suspension; the infractions were committed when the attorney was relatively young and inexperienced, and the misconduct was attributable in large measure to that inexperience and lack of supervision; and, most importantly, a very extended period of time had elapsed between the commission of the infractions and the imposition of discipline, and, during that time, the attorney had gained in experience and knowledge and had engaged in the practice of law in good repute and without any ethical blemish or transgression. *E.g., In re Kotok,* 108 *N.J.* 314, 528 *A.*2d 1307 (1987); *see In re Stier,* 108 *N.J.* 455, 530 *A.*2d 786 (1987). We adhere to the view that a suspended suspension constitutes an exceptional form of discipline and is not appropriate in any other kind of disciplinary case.

 We do not believe a case in which an attorney has been convicted of a possessory crime relating to controlled dangerous substances merits a suspended suspension even when, prior to the imposition of discipline, the underlying addiction has been zealously addressed by the attorney and rehabilitation has been accomplished. This Court has consistently ordered a three-month suspension for violations similar to those committed by this respondent. *See, e.g., In re Benjamin,* 135 *N.J.* 461, 640 *A.*2d 845 (1994) (three-month suspension for unlawful possession of 0.26 grams of

cocaine and under 50 grams of marijuana); *In re Sheppard*, 126 *N.J.* 210, 594 *A.*2d 1333 (1991) (three-month suspension for possession of under 50 grams of marijuana and for failure to deliver a controlled dangerous substance (cocaine) to a law enforcement officer); and *In re Nixon, supra*, 122 *N.J.* 290, 585 *A.*2d 322 (three month suspension for possession of less than 50 grams of marijuana and 126 grams of cocaine).

■ We continue to believe that an attorney who breaks the criminal laws relating to the possession of controlled dangerous substances thereby commits ethical infractions that demonstrate a disrespect for law, denigrate the entire profession and destroy public confidence in the practicing bar. Those offenses cannot be countenanced. We thus reaffirm the reasons that have prompted us to impose suspensions on attorneys for violating our laws relating to controlled dangerous substances.

■ We are not, however, unmindful of the special hardship that befalls an attorney who is suspended from the practice of law several years after the occurrence of the criminal and ethics offenses, and after he or she has confronted the underlying addiction that gave rise to the offenses, and has achieved recovery. However, the special hardship in imposing a suspension on such an attorney after successful rehabilitation is not that the suspension from the practice of law is disproportionate to the offense. It is not. *E.g. In re Nixon, supra.* Rather, it is the suspension from the practice of law that is imposed *after* rehabilitation has been achieved that can engender special hardship because it may itself jeopardize that recovery, undermine rehabilitation and incite relapse.

■ That concern, therefore, prompts us to fashion a disciplinary measure that may appropriately and fairly accommodate any attorney whose drug addiction has contributed to his or her commission of a possessory CDS offense, but who has conscientiously, promptly and successfully achieved rehabilitation, and has recognized the continuing need to remain drug-free and maintain

sobriety. We, accordingly, determine that a suspension for a possessory CDS offense remains a proper measure of discipline but that, if at all possible, it should be imposed immediately following the commission of the offense so that it may coincide with any rehabilitation program and recovery efforts that are undertaken by the attorney following the commission of the underlying offense. In that way, the public confidence will be vindicated by the exaction of strict discipline commensurate with the commission of a criminal offense, and, the attorney will not be confronted by a delayed suspension that may serve to undermine the rehabilitation that he or she has achieved. We, therefore, now authorize a form of discipline—an accelerated suspension—for this class of cases. We do not authorize this form of discipline in cases involving controlled dangerous substances in which there are egregious and aggravating circumstances. *E.g., In re Hasbrouck, supra.*

This form of discipline can be imposed only on the initiative and with the agreement of the attorney charged with CDS possessory offenses, who determines to admit or plead guilty to the commission of those offenses and to seek a prompt suspension to coincide with entry into a rehabilitation program. The attorney shall apply to the Office of Attorney Ethics for a Motion for Discipline by Consent under *Rule* 1:20–10(b) and for an immediate suspension pending the disposition of the Motion for Final Discipline by Consent. The consent to be suspended should be for a period of time that will not exceed the amount of time the attorney would be suspended were the matter processed in the normal course. Thus, if possession of cocaine usually warrants a six-month suspension, the attorney may consent to an immediate suspension for that period of time. In those cases, the standard appellate process shall be accelerated so that the DRB may review the Motion for Discipline by Consent and issue a decision to the Court within a period to coincide with the period of suspension. If the DRB denies the Motion for Final Discipline by Consent the respondent may move to vacate the temporary suspension. If

final discipline is a longer period of suspension respondent shall be credited with the suspension already served.

In this case, obviously respondent cannot obtain the discipline we now propose. He was arrested in 1991 when he committed the CDS offenses. He promptly undertook to achieve rehabilitation, which he has now accomplished and he has successfully rebuilt his law practice. Those circumstances, we repeat would not, in this kind of case, obviate the imposition of an appropriate suspension for the underlying CDS offenses if the attorney has not admitted the commission of the offenses, undertaken drug rehabilitation and requested an accelerated suspension. However, respondent could not have anticipated the feasibility of obtaining, and never had a realistic opportunity to seek, an early suspension, which we now authorize. Because this case serves as the vehicle for our announcement of a rule that would otherwise have benefitted respondent, fairness dictates that we refrain from imposing a suspension on him at this time. Accordingly, but only for the reasons expressed herein, we adopt the recommendation of the DRB and impose on respondent a three-month suspension from the practice of law and direct that that suspension be suspended.

In addition, respondent is to reimburse the Disciplinary Oversight Committee for costs, including but not limited to the cost of producing transcripts.

So ordered.

*For suspension*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN, JJ., concur.

*Opposed*—None.